# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MARTIN O. NICKERSON, JR., | No. 48702-1-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| WASHINGTON STATE DEPARTMENT OF REVENUE, GOVERNOR JAY INSLEE, Washington State Governor (in his official capacity), WASHINGTON ATTORNEY GENERAL BOB FERGURSON, (in his official capacity), CAROL NELSON, Director of Washington State Department of Revenue, (in her official capacity), and JOHN AND JANE DOES 1-10, | |
| Respondents. | |

MAXA, A.C.J. – Martin Nickerson appeals the trial court's denial of his motion for summary judgment and grant of summary judgment in favor of the Department of Revenue (DOR).[1] Nickerson sued to enjoin DOR from collecting retail sales taxes and business and operating (B&O) taxes after DOR assessed taxes against him and a business entity he owned based on his operation of a medical marijuana collective garden.

Nickerson claims that imposition of the retail sales and B&O taxes violates two provisions of the United States Constitution – the Supremacy Clause and the Fifth Amendment.

---

[1] In addition to DOR, Nickerson named as defendants Governor Jay Inslee, Attorney General Bob Ferguson, Director of DOR Carol Nelson, and unidentified employees of DOR. We refer to all defendants collectively as "DOR."

Specifically, Nickerson argues that the trial court erred in denying his injunction because (1) DOR's attempt to collect taxes on retail sales of medical marijuana is preempted by the federal Controlled Substances Act (CSA), 21 U.S.C. §§ 801-971; and (2) requiring that he file tax returns and pay taxes on medical marijuana sales would violate his right against self-incrimination by providing the State with evidence it could use against him in his pending criminal prosecution for possession and delivery of marijuana.

We hold that (1) the CSA does not preempt DOR's collection of retail and B&O taxes for medical marijuana sales because such tax collection does not create a positive conflict with the purpose of the CSA as required for preemption under 21 U.S.C. § 903, and (2) filing tax returns and paying retail sales and B&O taxes does not violate Nickerson's Fifth Amendment right against self-incrimination because those actions do not require Nickerson to divulge any incriminating information.

Accordingly, we affirm the trial court's denial of Nickerson's summary judgment motion and its grant of summary judgment in favor of DOR.

FACTS

In 2011, the legislature passed Engrossed Second Substitute Senate Bill (ESSSB) 5073 to address medical marijuana. Among other things, the bill allowed wholesale and retail sales of medical marijuana by licensed producers and dispensers. The governor signed ESSSB 5073 into law only after vetoing many sections, including the sections allowing the retail sale of medical marijuana. But the final law still allowed "noncommercial production, possession, transportation, delivery, or administration of cannabis for medical use" and the operation of "collective gardens," described as "qualifying patients sharing responsibility for acquiring and

supplying the resources required to produce and process cannabis for medical use." Former RCW 69.51A.025, .085(2) (2011). The law became known as the Washington State Medical Use of Cannabis Act (MUCA).

On March 8, 2011, Nickerson filed a master business application as a sole proprietor (doing business as "Northern Cross") and listed his business as selling "skin products, hemp products, soaps." Clerk's Papers (CP) at 93, 95. On February 23, 2012, Nickerson filed a second master business application for a corporation called "Northern Cross Collective Gardens" and listed "collective garden" as its principal product or service. CP at 97, 99. Nickerson also indicated that Northern Cross Collective Gardens was a retail business with an estimated gross annual income over $100,001. Nickerson checked the box for tax registration on both applications. However, neither he nor his business ever filed tax returns or paid taxes.

In May 2011 – after the governor signed ESSSB 5073 into law but before the law took effect – DOR released a notice that medical marijuana sales would be subject to retail sales taxes and B&O taxes.

On April 2, 2012, the State charged Nickerson with multiple felony counts for delivery of marijuana, possession of marijuana with intent to deliver, and maintaining a place for controlled substances.

On November 13, 2013, DOR assessed taxes against Nickerson and Northern Cross for the years 2011-2013 and against Northern Cross Collective Gardens for the years 2011-2012, but indicated that the amounts would be amended when Nickerson filed tax returns showing actual sales totals. Nickerson did not pay the taxes or respond to DOR, and on December 30 DOR issued tax warrants for unpaid taxes in the amount of $7,152.66 for Nickerson and $55,016.95

for Northern Cross Collective Gardens.  DOR then filed the warrants in superior court and obtained judgments against Nickerson and Northern Cross Collective Gardens.

DOR pursued collection of the unpaid taxes and garnished $824.23 from Nickerson's bank account.  DOR also revoked the business registrations for Nickerson and Northern Cross Collective Gardens.

On January 8, 2014, Nickerson filed a tax appeal petition with DOR.  DOR dismissed the petition as untimely because it was not filed within 30 days of the assessment.

On October 24, Nickerson filed suit against DOR, seeking declaratory relief and an injunction against enforcement of the tax assessments.  Nickerson then filed a summary judgment motion, seeking declaratory relief and a permanent injunction.  DOR filed a motion to dismiss, which the trial court later converted to a summary judgment motion.  The trial court denied Nickerson's summary judgment motion and granted DOR's summary judgment motion.

Nickerson appeals the trial court's summary judgment orders.

ANALYSIS

A.    LEGAL PRINCIPLES

1.    Standard of Review

We review a trial court's order granting summary judgment de novo.  *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).  We review the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party.  *Id.*  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  CR 56(c); *Keck*, 184 Wn.2d at 370.

2. Tax Review and Injunctive Relief

Nickerson claims that DOR should not have imposed taxes on his collective garden activities. But RCW 82.32.150 provides that a party generally cannot contest the imposition of taxes until all taxes, penalties, and interest have been paid. Because Nickerson has not paid the assessed taxes, he cannot challenge the imposition of retail sales and B&O taxes under Washington law. *See AOL, LLC v. Dep't of Revenue*, 149 Wn. App. 533, 547, 205 P.3d 159 (2009). In other words, in this action he cannot make any statutory arguments about the applicability of the tax code to his particular business and sales.

RCW 82.32.150 also states that a trial court cannot restrain or enjoin the collection of any tax, but provides an exception for when assessment of a tax violates the United States Constitution or Washington Constitution. Therefore, a party may challenge tax assessments on constitutional grounds and seek injunctive relief even if the taxes have not been paid. *AOL*, 149 Wn. App. at 547. Nickerson falls within this exception because he claims that the taxes violated the United States Constitution.[2]

3. Washington Retail and B&O Taxes

RCW 82.08.020(1)(a)[3] states that retail sales tax applies to "each retail sale" of "[t]angible personal property, unless the sale is specifically excluded from the RCW 82.04.050

---

[2] Nickerson also states that the taxes violate his right against self-incrimination under article 1, section 9 of the Washington Constitution, but his briefs focus exclusively on case law related to the Fifth Amendment. In any event, the Washington Constitution does not provide any greater protection than the Fifth Amendment. *See State v. Mendes*, 180 Wn.2d 188, 194, 322 P.3d 791 (2014), *cert. denied*, 135 S. Ct. 1718 (2015).

[3] RCW 82.08.020 has been amended since the events of this case transpired. See LAWS OF 2014, ch. 140, § 12. However, these amendments do not impact the statutory language relied on by this court. Accordingly, we do not include the word "former" before RCW 82.08.020.

definition of retail sale." None of the exclusions in RCW 82.04.050[4] apply to medical marijuana. A retail sale is defined as "every sale of tangible personal property . . . to all persons irrespective of the nature of their business." RCW 82.04.050(1)(a). The definition does not distinguish between legal and illegal sales.

RCW 82.04.220 requires those who make retail sales to pay retailing B&O tax on the gross proceeds of the sales made by their businesses. " 'Gross proceeds of sales' means the value proceeding or accruing from the sale of tangible personal property" without deductions for costs and expenses. RCW 82.04.070. As with the definition of "retail sale," the definition does not distinguish between legal and illegal sales.

To pay the applicable retail sales and B&O taxes, individuals or businesses must submit a combined excise tax return. The combined return requires the tax return preparer's name and the business name and address. Required information includes the gross amount of any sales, but not the type of product being sold.

B.    FEDERAL PREEMPTION

Nickerson argues that the CSA preempts DOR's application of Washington's tax laws to medical marijuana collective gardens.[5] We disagree.

---

[4] RCW 82.04.050 also has been amended since the events of this case transpired. See LAWS OF 2015, 3d Spec. Sess., ch. 6, § 1105. However, these amendments do not impact the statutory language relied on by this court. Accordingly, we do not include the word "former" before RCW 82.04.050.

[5] DOR argues that Nickerson has no standing to assert the preemption argument because even if we hold that the CSA preempts MUCA as Nickerson argues in his assignment of error, he still would not be entitled to tax relief. But because Nickerson's actual preemption argument is broader, we will assume without deciding that Nickerson has standing.

1.  Legal Principles

The preemption doctrine derives from the Supremacy Clause of the United States

Constitution, which provides that federal law shall be the supreme law of the land,

notwithstanding the constitution or laws of any state.  U.S. CONST. art. VI, cl. 2; *Mut. Pharm. Co.*

*v. Bartlett*, ___ U.S. ___, 133 S. Ct. 2466, 2473, 186 L. Ed. 2d 607 (2013).  But courts assume

that the historic police powers of the states are not preempted by a federal law unless preemption

was Congress's clear and manifest purpose.  *Wyeth v. Levine*, 555 U.S. 555, 565, 129 S. Ct.

1187, 173 L. Ed. 2d 51 (2009).  And in Washington, there is a strong presumption against

finding preemption – "[p]reemption is the exception, not the rule."  *Hisle v. Todd Pac. Shipyards*

*Corp.*, 151 Wn.2d 853, 864, 93 P.3d 108 (2004).

Preemption depends on Congress's intent, and Congress can preempt state law in three

ways:

> First, in enacting the federal law, Congress may explicitly define the extent to which
> it intends to pre-empt state law.  Second, even in the absence of express pre-emptive
> language, Congress may indicate an intent to occupy an entire field of regulation,
> in which case the States must leave all regulatory activity in that area to the Federal
> Government.  Finally, if Congress has not displaced state regulation entirely, it may
> nonetheless pre-empt state law to the extent that the state law actually conflicts with
> federal law.

*Mich. Canners & Freezers Ass'n v. Agric. Mktg. & Bargaining Bd.*, 467 U.S. 461, 469, 104 S.

Ct. 2518, 81 L. Ed. 2d 399 (1984) (internal citations omitted).  When a federal law contains an

express preemption provision, "the court 'must in the first instance focus on the plain wording of

the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.' "  *Hue*

*v. Farmboy Spray Co., Inc.*, 127 Wn.2d 67, 79, 896 P.2d 682 (1995) (quoting *CSX Transp., Inc.*

*v. Easterwood*, 507 U.S. 658, 664, 113 S. Ct. 1732, 123 L. Ed. 2d 387 (1993)).

The CSA contains an express preemption provision, which is entitled "Application of State Law":

> No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, *unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.*

21 U.S.C. § 903 (emphasis added). The parties agree that the language of 21 U.S.C. § 903 indicates that Congress did not intend to explicitly preempt state law or to occupy the entire field of regulation for controlled substances. Therefore, the parties agree that only the third means of preemption – conflict preemption – is at issue here.

Conflict preemption can occur when either (1) compliance with both federal and state law is impossible, or (2) state law " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Hillman v. Maretta*, ___ U.S. ___, 133 S. Ct. 1943, 1950, 186 L. Ed. 2d 43 (2013) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399, 85 L. Ed. 581 (1941)). These two types of conflict preemption are often referred to as "impossibility" and "obstacle" preemption.[6]

2.  Impossibility Preemption Analysis

Courts have noted that "[i]mpossibility pre-emption is a demanding defense." *Wyeth*, 555 U.S. at 573. Impossibility preemption asks whether it is " 'impossible for a private party to

---

[6] DOR argues that we should consider only the impossibility standard for conflict preemption because the phrase "so that the two cannot consistently stand together" in 21 U.S.C. § 903 indicates that only conflicts making it impossible to comply with both state law and the CSA would trigger preemption. We do not need to decide this issue because Nickerson's argument fails under both the impossibility and obstacle standards.

comply with both state and federal requirements.' " *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 618, 131 S. Ct. 2567, 180 L. Ed. 2d 580 (2011) (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S. Ct. 1483, 131 L. Ed. 2d 385 (1995)). It is met when state law requires that which federal law forbids or vice versa. *Mut. Pharmaceutical*, 133 S. Ct. at 2476-77.

Nickerson cannot meet the requirements of impossibility preemption here because he cannot show that Washington law requires him to violate federal law. DOR assessed retail sales and B&O taxes against Nickerson for his collective garden's "sales" of medical marijuana. Under Washington law, Nickerson is required to pay applicable retail sales and B&O taxes. But Washington tax law does not compel Nickerson to engage in conduct the CSA forbids – selling marijuana.

Nickerson does not explain how paying retail sales and B&O taxes would constitute a violation of the CSA. Accordingly, we hold that impossibility preemption does not apply.

3. Obstacle Preemption Analysis

Nickerson argues that even if impossibility preemption does not apply, DOR's taxation of collective gardens triggers obstacle preemption. "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373, 120 S. Ct. 2288, 147 L. Ed. 2d 352 (2000). We must first consider the entire scheme of the CSA to determine its purpose and then ask whether that purpose can be accomplished or if the state law frustrates the CSA's provisions and refuses their natural effect. *Id.*

The Supreme Court has described the "main objectives" of the CSA as "combating drug abuse and controlling the legitimate and illegitimate traffic in controlled substances" by creating

a "comprehensive, closed regulatory regime criminalizing the unauthorized manufacture, distribution, dispensing, and possession" of classified substances. *Gonzales v. Oregon*, 546 U.S. 243, 250, 126 S. Ct. 904, 163 L. Ed. 2d 748 (2006). The Court also has noted that "a primary purpose of the CSA is to control the supply and demand of controlled substances in both lawful and unlawful drug markets." *Gonzales v. Raich*, 545 U.S. 1, 19, 125 S. Ct. 2195, 162 L. Ed. 2d 1 (2005).

Nickerson argues that the DOR's application of retail sales and B&O taxes to medical marijuana collective gardens conflicts with the purposes of the CSA. He argues that by applying retail sales and B&O taxes to collective gardens, DOR effectively "converted" a noncommercial activity into a commercial activity. But again, taxing Nickerson's marijuana transactions does not change the nature of those transactions. Nickerson has not established that his collective garden activities would be any different if those activities were not taxed.

DOR's tax assessments on collective gardens indicate that it is aware of the medical marijuana market, but that is not the same as promoting or condoning the market. It is well-established that states have authority to tax illegal activities. *Dep't of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 778, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994). DOR's tax assessments did not *cause* Nickerson to grow, possess, and distribute medical marijuana. Rather, DOR imposed taxes on Nickerson *because* he had distributed medical marijuana in exchange for other items of value. The taxes came after the fact.

In addition, the CSA is concerned with the supply and demand of classified drugs and therefore seeks to control the "distribution, dispensing, and possession" of classified drugs. *Gonzales*, 546 U.S. at 250. It is hard to see how the DOR's tax assessments would disturb the

CSA's ability to regulate the distribution, dispensing, or possession of marijuana. Further, DOR's tax assessments do not impede federal prosecution for CSA violations. Federal authorities are free to enforce the CSA in an effort to effectuate the purposes and objectives of the law – to control drug trafficking and the supply and demand for classified drugs.

Accordingly, we hold that DOR's application of retail sales and B&O taxes to collective gardens' "sales" of medical marijuana does not create an obstacle to the execution of the full purposes and objectives of the CSA.

4.    Summary

Because DOR's application of the retail sales and B&O taxes to the "sale" of medical marijuana through collective gardens does not create a "positive conflict" with the CSA as required in 21 U.S.C. § 903, these taxes are not preempted and do not violate the Supremacy Clause of the United States Constitution. Accordingly, Nickerson fails to show he is entitled to an injunction on this basis.

C.    FIFTH AMENDMENT CLAIM

Nickerson argues that his Fifth Amendment right against self-incrimination would be violated if he was required to file a tax return showing his gross income from the collective garden and to pay taxes on that income. We disagree.

1.    Legal Principles

The Fifth Amendment to the United States Constitution, which was made applicable to the states by the Fourteenth Amendment, provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V; *Chavez v. Martinez*, 538 U.S. 760, 766, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2003). Only communication that is

testimonial, incriminating, and compelled can qualify for protection under the Fifth Amendment. *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt County*, 542 U.S. 177, 189, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004).

A testimonial communication is one that explicitly or implicitly relates to a factual assertion or discloses information. *Id.* And an incriminating communication is one that the witness " 'reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.' " *Id.* at 190 (quoting *Kastigar v. United States*, 406 U.S. 441, 445, 92 S. Ct. 1653, 32 L. Ed. 2d 212 (1972)).

The Fifth Amendment protection encompasses more than statements that are themselves inculpatory:

> The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a *link in the chain of evidence* needed to prosecute the claimant for a federal crime.

*Hoffman v. United States*, 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1118 (1951) (emphasis added). Therefore, the scope of statements covered by the Fifth Amendment is not limited to compelled testimony that is actually used against the defendant in a criminal trial, but also includes compelled statements that provide a "link in the chain." *United States v. Hubbell*, 530 U.S. 27, 37-38, 120 S. Ct. 2037, 147 L. Ed. 2d 24 (2000). However, "the fact that incriminating evidence may be the byproduct of obedience to a regulatory requirement, such as filing an income tax return . . . does not clothe such required conduct with the testimonial privilege." *Id.* at 35.

2. Fifth Amendment and Taxes

In *United States v. Sullivan*, the defendant argued that filing an income tax return would violate his Fifth Amendment rights because his income derived from the illegal sale of alcohol. 274 U.S. 259, 262-64, 47 S. Ct. 607, 71 L. Ed. 1037 (1927). The tax statute at issue had broad applicability and defined gross income as income derived from any source. *Id.* at 263. The Court held that the Fifth Amendment did not offer a defense to the defendant's prosecution for willful failure to file a return because the income tax return did not compel any incriminating information. *Id.* at 263-64. The Court concluded that "[i]t would be an extreme if not an extravagant application of the Fifth Amendment to say that it authorized a man to refuse to state the amount of his income because it had been made in crime." *Id.*

In contrast, in *Marchetti v. United States* the Court upheld a Fifth Amendment argument regarding a tax system that specifically targeted those engaged in the business of illegal wagering. 390 U.S. 39, 41-44, 88 S. Ct. 697, 19 L. Ed. 2d 889 (1968). The tax statutes at issue in *Marchetti* required persons engaged in a wagering business to register with the Internal Revenue Service and to provide detailed information about their operations. *Id.* at 42-43. The Court noted that in all states wagering was "an area permeated with criminal statutes," making those engaged in wagering "a group inherently suspect of criminal activities." *Id.* at 47 (internal quotation marks omitted). The Court held that the wagering tax statutes created a "real and appreciable, and not merely imaginary and unsubstantial" risk of self-incrimination because of the comprehensive information the statutes required from registrants. *Id.* at 48 (internal quotation marks omitted).

In *Leary v. United States*, the Court held that the defendant's invocation of his Fifth Amendment right provided a full defense to his conviction for failure to pay the transfer tax required by the "Marihuana Tax Act". 395 U.S. 6, 29, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969). The statutes at issue were similar to those in *Marchetti* in that they provided a comprehensive scheme requiring forms for registration and payment that applied only to a specific group (those dealing in marijuana) and provided that records of compliance could be obtained by law enforcement. *Id.* at 14-15. The Court reasoned that the marijuana transfer tax imposed on the defendant a "real and appreciable risk of self-incrimination" by requiring him to identify himself "not only as a transferee of marihuana but as a transferee who had not registered and paid the occupational tax" required by law. *Id.* at 16 (internal quotation marks omitted). Therefore, the defendant had "ample reason to fear" that complying with the transfer tax would provide a "link in a chain of evidence tending to establish his guilt" under the state marijuana laws. *Id.* (internal quotation marks omitted).

3.   Fifth Amendment Analysis

Nickerson argues that if he files the combined excise tax return to pay retail sales and B&O taxes, "any gross income on the tax return, combined with the business registrations, would be evidence tending to incriminate him for purposes of that criminal prosecution, as well as many federal crimes" because it would indicate that he received funds for providing marijuana. Br. of Appellant at 33. We disagree.

There are several reasons why Nickerson's payment of the retail sales and B&O tax would not create a "real and appreciable" risk of self-incrimination. First, unlike the tax statutes at issue in *Marchetti* and *Leary*, the tax statutes at issue here are generally applicable retail sales

and B&O taxes.  The taxes apply to all people and businesses that make sales within Washington without regard to what is sold.  Therefore, the mere fact that Nickerson is subject to retail sales and B&O taxes does not create any suspicion of criminal activity.

Second, the combined excise tax return does not require any incriminating information. The tax returns in *Marchetti* and *Leary* essentially required the taxpayer to admit to engaging in illegal activity.  But Nickerson needed to provide only sales totals and information about where the sales took place in order to complete his return.  The return did not ask Nickerson to identify what he sold.

Third, Nickerson's argument that the tax return will provide a link in the chain leading to other incriminating evidence is too vague and speculative.  Nickerson argues that including his tax registration number on the tax return will lead law enforcement to his business application. He argues that the tax return and business application together are evidence that he possessed and delivered marijuana.  But his business application does not contain any incriminating information – it simply states that he sells skin products, hemp products, and soap.  And the Northern Cross Collective Gardens' business application simply lists its business as a "collective garden," which was a legal activity under the MUCA.

Finally, at the time Nickerson filed this lawsuit he was not required to file a tax return because DOR has already obtained warrants and judgments for his unpaid taxes.  At that point, Nickerson only needed to pay the judgment to satisfy DOR.

Paying generally applicable taxes assessed on legal medical marijuana sales cannot create a "real and appreciable" risk of self-incrimination.  The tax return neither directly nor indirectly provides any incriminating information and Nickerson at this time does not even need to file a

tax return. As a result, it would be an "extreme if not an extravagant application of the Fifth Amendment" to say that Nickerson cannot pay the judgment for unpaid retail sales and B&O taxes. *Sullivan*, 274 U.S. at 263-64. Therefore, we hold that the Fifth Amendment right against self-incrimination does not apply.

## CONCLUSION

DOR's taxation of Nickerson and his business does not violate either the Supremacy Clause or the Fifth Amendment. Accordingly, we affirm the trial court's denial of Nickerson's summary judgment motion and its grant of summary judgment in favor of DOR.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, A.C.J.

We concur:

WORSWICK, J.

MELNICK, J.