

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE SEP 24 2015

Madsen C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00am on Sept. 24, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| DARLA KECK and RON JOSEPH GRAHAM, wife and husband; DARLA KECK and RON JOSEPH GRAHAM, as parents for the minor child, KELLEN MITCHELL GRAHAM; and KELLEN MITCHELL GRAHAM, individually, | ) ) ) ) ) ) ) ) | No. 90357-3 |
| Respondents, | ) ) ) |  |
| v. | ) ) | En Banc |
| CHAD P. COLLINS, DMD; PATRICK C. COLLINS, DDS; and COLLINS ORAL & MAXILLOFACIAL SURGERY, PS, a Washington corporation, | ) ) ) ) ) ) |  |
| Petitioners, | ) ) ) |  |
| SACRED HEART MEDICAL CENTER, a Washington corporation, | ) ) ) | Filed      SEP 24 2015 |
| Defendant. | ) ) ) ) | |

MADSEN, C.J.—Darla Keck filed a medical malpractice case against doctors Chad Collins, DMD, and Patrick Collins, DDS (collectively the Doctors) after she experienced complications following sleep apnea surgery. Her claim focuses on the quality of treatment that she received postsurgery, which she alleges fell below the

applicable standard of care. Generally in a medical malpractice claim, a plaintiff needs testimony from a medical expert to establish two required elements—standard of care and causation. RCW 7.70.040; *Grove v. PeaceHealth St. Joseph Hosp.*, 182 Wn.2d 136, 144, 341 P.3d 261 (2014).

The Doctors moved for summary judgment, arguing she lacked a qualified medical expert who could provide testimony to establish her claim. In response to the motion, her counsel filed two timely affidavits and one untimely affidavit from her medical expert. The trial court granted a motion to strike the untimely affidavit. Considering the remaining affidavits, the court ruled that the expert did not connect his opinions to specific facts to support the contention that the Doctors' treatment fell below the standard of care. Therefore, the court granted summary judgment for the Doctors.

The Court of Appeals reversed. Although it agreed that the two timely affidavits lacked sufficient factual support to defeat summary judgment, it held, under de novo review, that the trial court should have denied the motion to strike and should have considered the third affidavit. This affidavit, the court held, contained sufficient factual support to defeat summary judgment.

This case raises two issues.

First, we must decide the standard of review for a challenged ruling to strike untimely filed evidence submitted in response to a summary judgment motion. We hold that the trial court must consider the factors from *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997), on the record before striking the evidence. The

court's decision is then reviewed for an abuse of discretion. In this case, the trial court abused its discretion because it failed to consider the *Burnet* factors.

Second, we consider whether the expert's timely second affidavit[1] showed a genuine issue for trial—that a reasonable jury could return a verdict for the plaintiff—to defeat summary judgment. We conclude it did. On this basis, we affirm the Court of Appeals.

## FACTS

On November 26, 2007, Dr. Chad and Dr. Patrick,[2] performed sleep apnea[3] surgery on Darla Keck. The surgery involved cutting bone on the upper and lower jaws to advance them, thereby opening airway space to improve her breathing.

Following the surgery, Keck suffered complications.[4] On December 6, she went to a follow-up appointment with the Doctors, experiencing pain and exuding green pus from one of her surgical wounds. Over the next several months, she continued to experience pain and swelling and developed an infection in her jawbone.

---

[1] The substance of the two timely affidavits remained the same, but the first omitted reference to Dr. Patrick Collins. To avoid being duplicative, our analysis will discuss only the second affidavit because it refers to both doctors.

[2] For the sake of clarity, Dr. Chad Collins will be referred to as "Dr. Chad" and Dr. Patrick Collins will be referred to as "Dr. Patrick."

[3] "Sleep apnea" refers to "brief periods of recurrent cessation of breathing during sleep that is caused esp[ecially] by obstruction of the airway or a disturbance in the brain's respiratory center and is associated esp[ecially] with excessive daytime sleepiness." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 130a (2002).

[4] For a more detailed recitation of the postsurgical facts and the problems experienced by Keck, see the Facts section in *Keck v. Collins*, 181 Wn. App. 67, 73-76, 325 P.3d 306 (2014).

One or both doctors treated her after the initial surgery.[5] At follow-up appointments on December 6 and 17, Dr. Chad prescribed an antibiotic. On January 24, 2008, Dr. Chad surgically removed loose plates and screws left in place from the surgery, cleaned out infected parts of the jawbone, and wired Keck's jaw shut. Keck went to the emergency room three days later experiencing facial swelling. On March 18, Dr. Chad performed another surgery to clean the infected jawbone and install "more stout hardware" because her jaw had not yet formed healthy bone, a condition called "nonunion." Clerk's Papers (CP) at 136. At a follow-up visit on June 11, Keck had loose bone and hardware that moved with finger manipulation. On July 18, Dr. Chad surgically grafted bone and installed new hardware. Still experiencing problems, Keck went to another oral surgeon, who surgically removed old hardware and installed new hardware.

Keck alleges that she now suffers from chronic pain, swelling, fatigue, nerve sensations in her eye, an acrid taste in her mouth, and numbness in her cheek and chin.

On November 23, 2010, Keck, along with her husband and son, filed a medical malpractice action against the Doctors. Dr. Patrick moved for summary judgment on December 20, 2011, arguing that plaintiffs lacked competent medical testimony that could establish a prima facie medical negligence claim.

Counsel for Dr. Patrick originally scheduled the hearing on the motion for January 20, 2012. After conversation with plaintiffs' counsel, counsel for Dr. Patrick agreed to withdraw the summary judgment motion and renote it on a later date after the

_____

[5] The parties dispute the specific involvement each doctor had in the postsurgery care.

court issued an amended trial schedule order. After the amended schedule order issued, Dr. Patrick renoted his motion, with a hearing date scheduled for March 30. Counsel for Dr. Chad filed a joinder in the motion.

Civil Rule 56(c) requires that the nonmoving party submit supporting affidavits, memoranda, or law no later than 11 days before the hearing. Plaintiffs' counsel timely submitted an affidavit of plaintiffs' medical expert, Dr. Kasey Li, on March 16. This affidavit, however, referred only to Dr. Chad. On March 22, plaintiffs filed a second affidavit of Dr. Li that referred to both doctors. In all other respects, the second affidavit remained unchanged from the first. Although plaintiffs filed the second affidavit after the 11 day limit imposed by CR 56(c), the Doctors did not object on the basis of timeliness.[6]

In the second affidavit, Dr. Li stated:

1. I am Physician Board Certified in Otolaryngology and Oral Surgery. I practice both Otolaryngology and Plastic Reconstructive Surgery at Stanford Hospital in Stanford, California and am on the faculty of the hospital. Additionally, I am the founder of the Sleep Apnea Surgery Center, also located at Stanford. Among other things, I am a specialist in the diagnosis, surgery and treatment of sleep apnea. Furthermore, I am licensed to practice in the State of Washington and have consulting privileges at Virginia Mason.

2. I am familiar with the standard of care in Washington State as it relates to the treatment of sleep apnea and the procedures involved in Ms. Keck's case. In addition to being involved in another case in Spokane and having discussed that case with an Otolaryngologist at the University of Washington, I lecture in Washington State on many issues which include those involved in this case and, as part of that, interact with the participants and have discussions that confirm that the standard of care in Washington State is the same as a national standard of care. Additionally in my

---

[6] Counsel for Dr. Patrick did object to the timeliness of the second affidavit in a reply memorandum. But counsel did not renew this objection at the summary judgment hearing or on appeal.

position, I interact with oral surgeons from the State of Washington which include former students from Stanford University. Given my knowledge, it is my opinion that the standard of care involved in Ms. Keck's case in Washington State is a national standard of care.

3. I have reviewed medical records from Drs. Chad and Patrick Collins, Western Mountain Clinic, Dr. Higuchi, Deaconess Medical Center, Dr. Read, Dr. Ramien, St. Patrick's Hospital, Sacred Heart Hospital, imaging photos and disks, and medical records from Cosmetic Surgical Arts Center and Dr. George M. Olsen, D.D.S. As part of my review, I looked at the procedures performed by Drs. Chad and Patrick Collins (the surgeons) as well as the problems experienced by the Plaintiff Darla Keck. In doing so, I have identified standard of care violations that resulted in infection and in non-union of Ms. Keck's jaw. This, in turn, has resulted in a prolonged course of recovery with numerous additional procedures to repair the ongoing problems which I understand have still not resolved.

4. According to the medical records, on November 26, 2007, Darla Keck was seen by the surgeons to address sleep apnea which was moderate to severe with a sleep score of 20. From the records, it appears that Ms. Keck was intolerant of CPAP.

5. The surgeons performed multiple operations without really addressing the problem of non-union and infection within the standard of care.

6. With regards to referring Ms. Keck for follow up care, the records establish that the surgeons were sending Ms. Keck to a general dentist as opposed to an oral surgeon or even a plastic surgeon or an Ear, Nose and Throat doctor. Again, this did not meet the standard of care as the general dentist would not have had sufficient training or knowledge to deal with Ms. Keck's non-union and the developing infection/osteomyelitis.

7. The standard of care violations as outlined herein were the proximate cause of Ms. Keck's injuries and/or ongoing problems. The opinions I express in this declaration are intended to be rendered to a reasonable degree of medical probability or certainty or on a more probable than not basis both as it relates to standard of care as well as causation and damages. To the extent it is raised by the defendants, I am familiar with the standard of care required in the State of Washington for Oral Maxillofacial Surgery such as the surgeons['] actions in the same or similar circumstances related to the provision of care provided to Ms. Keck.

CP at 46-48.

In reply to Dr. Li's second affidavit, the Doctors argued that the plaintiffs failed to raise a genuine issue of material fact because Dr. Li's affidavit contained only conclusory statements without adequate factual support. They did not, however, argue that Dr. Li was unqualified to give an opinion in the case.

Prompted by the argument that Dr. Li's second affidavit lacked sufficient detail, the plaintiffs submitted an untimely, third affidavit of Dr. Li on March 29, the day before the summary judgment hearing and 10 days after the filing deadline imposed by CR 56(c).

Plaintiffs' counsel explained the untimeliness of Dr. Li's third affidavit. He contended that Dr. Patrick's counsel filed the motion without verifying his availability, which was limited during the period for submitting affidavits. From March 7 until March 20, 2012, he participated in a medical malpractice trial. During the ongoing trial, he worked with Dr. Li to obtain an affidavit that responded to the motion. Although he believed the second affidavit would defeat summary judgment, he submitted the third affidavit in the event that the court found the second one insufficient. He requested that the court excuse the late filing and consider the supplemental affidavit at the March 30 hearing or, alternatively, that the court continue the motion hearing pursuant to CR 56(f) so that the court could evaluate it.

The Doctors moved to strike the third affidavit as untimely. While the court noted plaintiffs' counsel's explanation and that trial was several months away, which reduced

the prejudice to the Doctors, it ultimately granted the motion to strike and denied the motion for a continuance. Considering only the first and second affidavits, the trial court granted summary judgment in favor of the Doctors on the negligent postoperative care claim. The trial court concluded, under *Guile v. Ballard Community Hospital*, 70 Wn. App. 18, 851 P.2d 689, *review denied*, 122 Wn.2d 1010 (1993), that the affidavits lacked "specific identified facts which would support the contention that the defendants' actions fell below the requisite standard of care." CP at 102.

The Court of Appeals reversed. *Keck v. Collins*, 181 Wn. App. 67, 73, 325 P.3d 306 (2014). Reviewing the ruling on the motion to strike, the court concluded that it should apply a de novo rather than an abuse of discretion standard of review because the ruling was made in conjunction with a summary judgment motion. *Id.* at 79. The majority determined de novo review appropriate based on a passage in *Folsom* that states de novo review applies to "'all trial court rulings made in conjunction with a summary judgment motion.'" *Id.* (quoting *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998)).

Under de novo review, the Court of Appeals determined that the trial court should have excused the late filing or granted a continuance to consider the third affidavit. *Id.* at 89. The Court of Appeals then reversed the summary judgment order, holding the third affidavit showed a genuine issue for trial. *Id.* at 92-93. However, the court affirmed the trial court's conclusion that the second affidavit lacked specific facts under *Guile* to defeat summary judgment. *Id.* at 91-92.

Before this court, the Doctors argue that the Court of Appeals erred by reviewing de novo the trial court's decision to exclude the third affidavit and by reversing that decision. The Keck family raises a second issue, arguing that the Court of Appeals erred by holding the second affidavit insufficient to defeat summary judgment.

## ANALYSIS

1. *An order striking untimely evidence at summary judgment requires a* Burnet *analysis and is reviewed for abuse of discretion*

When we review a summary judgment order, we must consider all evidence in favor of the nonmoving party. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989). Before we can consider the evidence in this case, however, we need to determine what evidence is before us. The trial court struck one possible piece of evidence—Dr. Li's third affidavit—as untimely. To determine the propriety of this decision, we must first settle which standard of review applies.

Relying on a statement in *Folsom* that says the de novo standard applies to "'all trial court rulings made in conjunction with a summary judgment motion,'" the Court of Appeals reviewed de novo the trial court's ruling striking the third affidavit as untimely. *Keck*, 181 Wn. App. at 79 (quoting *Folsom*, 135 Wn.2d at 663). The quoted phrase from *Folsom*, however, referred to the trial court's evidentiary rulings on admissibility. *See* 135 Wn.2d at 662-63. It did not address rulings on timeliness under our civil rules. *See id.*

Our precedent establishes that trial courts must consider the factors from *Burnet*, 131 Wn.2d 484, before excluding untimely disclosed evidence; rather than de novo

review under *Folsom*, we then review a decision to exclude for an abuse of discretion. *See, e.g., Blair v. TA-Seattle E. No. 176*, 171 Wn.2d 342, 348, 254 P.3d 797 (2011) (holding trial court abused its discretion by not applying *Burnet* factors before excluding witnesses disclosed after court's deadline). We have said that the decision to exclude evidence that would affect a party's ability to present its case amounts to a severe sanction. *Id.* And before imposing a severe sanction, the court must consider the three *Burnet* factors on the record: whether a lesser sanction would probably suffice, whether the violation was willful or deliberate, and whether the violation substantially prejudiced the opposing party. *Jones v. City of Seattle*, 179 Wn.2d 322, 338, 314 P.3d 380 (2013).

While our cases have required the *Burnet* analysis only when severe sanctions are imposed for discovery violations, we conclude that the analysis is equally appropriate when the trial court excludes untimely evidence submitted in response to a summary judgment motion. Here, after striking the untimely filed expert affidavit, the trial court determined that the remaining affidavits were insufficient to support the contention that the Doctors' actions fell below the applicable standard of care. Essentially, the court dismissed the plaintiffs' claim because they filed their expert's affidavit late.[7] But "our overriding responsibility is to interpret the rules in a way that advances the underlying purpose of the rules, which is to reach a just determination in every action." *Burnet*, 131 Wn.2d at 498 (citing CR 1). The "'purpose [of summary judgment] is not to cut litigants

---

[7] Although the trial court did not evaluate the merits of the third affidavit, the parties appear to agree that this affidavit would have created a genuine issue of material fact to defeat summary judgment. The Doctors, for example, did not challenge the Court of Appeals' holding that the third affidavit was sufficient.

off from their right of trial by jury if *they really have evidence which they will offer on a trial*, it is to carefully test this out, in advance of trial *by inquiring and determining whether such evidence exists.*'" *Preston v. Duncan*, 55 Wn.2d 678, 683, 349 P.2d 605 (1960) (quoting *Whitaker v. Coleman*, 115 F.2d 305, 307 (5th Cir. 1940)).

In this case, the trial court abused its discretion by not considering the *Burnet* factors before striking the third affidavit. Aside from noting that the trial date was several months away, which tended to reduce the prejudice to the defendants, the court made no finding regarding willfulness or the propriety of a lesser sanction. We reverse the order striking the third affidavit.

### 2. *The second affidavit created a genuine issue of material fact*

We review summary judgment orders de novo, considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Folsom*, 135 Wn.2d at 663. Summary judgment is appropriate only when no genuine issue exists as to any material fact[8] and the moving party is entitled to judgment as a matter of law. *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 444, 334 P.3d 541 (2014).

To establish medical malpractice, Keck must prove that the Doctors' treatment fell below the applicable standard of care and proximately caused her injuries. *See* RCW 7.70.040. Generally, the plaintiff must establish these elements through medical expert testimony. *Grove*, 182 Wn.2d at 144. The Doctors moved for summary judgment on the ground that Keck had not presented any qualified expert who could reasonably establish a

---

[8] "A material fact is one that affects the outcome of the litigation." *Owen v. Burlington N. Santa Fe R.R.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005).

breach of the standard of care and proximate cause. In other words, they argued that no genuine issue of material fact remained for trial because she could not establish two essential elements of her malpractice claim. *See Young*, 112 Wn.2d at 225-26 (holding moving party carries initial burden of showing no genuine issue by arguing nonmoving party has a failure of proof concerning a necessary element of nonmoving party's claim).

An issue of material fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Herron v. KING Broad. Co.*, 112 Wn.2d 762, 768, 776 P.2d 98 (1989). Our analysis, then, asks whether Dr. Li's testimony could sustain a verdict in Keck's favor on her malpractice claim.

A plaintiff seeking damages for medical malpractice must prove his or her "injury resulted from the failure of a health care provider to follow the accepted standard of care." RCW 7.70.030(1). The standard of care means "that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances" (reasonable doctor). RCW 7.70.040(1). To sustain a verdict, Keck needs an expert to say what a reasonable doctor would or would not have done, that the Doctors failed to act in that manner, and that this failure caused her injuries.

The Doctors argued and the Court of Appeals agreed that the second affidavit is insufficient regarding the standard of care because Dr. Li did not provide any details

12

about what standard applied. We disagree. We conclude that paragraphs 5 and 6 speak to the standard of care and the Doctors' breach of that standard.

Paragraph 5 states, "The surgeons performed multiple operations without really addressing the problem of non-union and infection within the standard of care." CP at 48. Viewed in the light most favorable to the plaintiffs, this sentence avers that a reasonable doctor would have addressed Keck's problems of nonunion and infection— the standard of care. The Doctors did not actually treat these underlying problems, even though they performed multiple surgeries on her—breach.

Paragraph 6 states:

> With regards to referring Ms. Keck for follow up care, the records establish that the surgeons were sending Ms. Keck to a general dentist as opposed to an oral surgeon or even a plastic surgeon or an Ear, Nose and Throat doctor. Again, this did not meet the standard of care as the general dentist would not have had sufficient training or knowledge to deal with Ms. Keck's non-union and the developing infection/osteomyelitis.

*Id.*

Reading this paragraph in conjunction with paragraph 5, a jury could conclude that a reasonable doctor would have referred Keck to another qualified doctor for treatment— the standard of care—and that the Doctors did not treat her issues or make an appropriate referral—breach.

When taken in the light most favorable to the nonmoving party, Dr. Li's affidavit establishes the applicable standard of care and that the defendants breached it. Additionally, Dr. Li stated that these violations proximately caused Keck's injuries

within a reasonable degree of medical certainty.[9] *Id.* Dr. Li provided the necessary

testimony to establish a prima facie case of medical malpractice.[10] *See* RCW 7.70.040.

We therefore conclude that a jury could return a verdict for the plaintiffs, which means

that genuine issues of material fact regarding the standard of care and causation remain

for trial. Accordingly, the trial court erred in granting summary judgment.

The Doctors also argue that we should rely on *Guile*, as the Court of Appeals did,

and hold Dr. Li's second affidavit insufficient. But *Guile* is distinguishable.

In *Guile*, the defendants moved for summary judgment of plaintiff's malpractice

claim on the ground that the plaintiff lacked competent medical evidence to establish her

claim. 70 Wn. App. at 21, 23-24. The plaintiff submitted an affidavit from her medical

expert. *Id.* at 26. The Court of Appeals held the affidavit insufficient to defeat summary

judgment because it failed to identify specific facts supporting the expert's conclusion

---

[9] The Doctors suggest that Dr. Li's conclusion regarding proximate cause is deficient because he failed to identify the specific "'problems'" Keck has experienced. Pet'rs' Joint Suppl. Br. at 19. However, paragraph 6 refers to Keck's developing infection. CP at 48. Moreover, while Dr. Li must establish proximate cause for Keck's injuries through his testimony, he need not detail all of her alleged injuries.

[10] Keck argues for a less stringent summary judgment standard for experts, citing ER 705, which allows an expert to give an opinion without first disclosing the underlying facts unless the court requires otherwise. The proposed standard would allow a qualified expert to only state that "the defendant breached the standard of care and caused the plaintiff's injuries," without providing more, to defeat summary judgment. However, to survive summary judgment in any case, there must be a question of material fact. We reject Keck's invitation to adopt a less stringent summary judgment standard for experts. We also reject the Doctors' suggestion for a more stringent standard. They challenge the factual foundation of Dr. Li's opinions, even though he stated that he relied on various medical records to reach his conclusions. CP at 47 (para. 3). ER 705 would allow an expert's testimony without prior disclosure of the underlying facts, unless the trial court required disclosure. As long as the expert's affidavit testimony, if believed, could sustain a verdict, the trial court should give the plaintiff an opportunity to supply more detail if the court determines more detail would be desirable. *See Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1317 (1985).

that the defendant surgeon negligently performed surgery. *Id.* The affidavit summarized plaintiff's postsurgical injuries and opined that the injuries were caused by the surgeon's "'faulty technique,'" which fell below the applicable standard of care. *Id.*

To say that a reasonable doctor would not use a faulty technique essentially states that a reasonable doctor would not act negligently. This testimony fails to establish the applicable standard of care—how the defendant acted negligently—and therefore could not sustain a verdict for the plaintiff. Conversely, Dr. Li stated the applicable standard of care and how the Doctors breached that standard: a reasonable doctor would have actually treated Keck's developing infection and nonunion or made an appropriate referral to another doctor for treatment, but here, the Doctors did neither.

Additionally, we note that the expert in *Guile* failed to link his conclusions to any factual basis, including his review of the medical records.[11] *See id.* In contrast to the expert in *Guile*, Dr. Li connected his opinions about the standard of care and causation to a factual basis: the medical records. Dr. Li stated that he reviewed medical records in the case and the procedures performed by the defendants, and within that factual review, he identified standard of care violations. CP at 47 (para. 3).

## CONCLUSION

Before excluding untimely evidence submitted in response to a summary judgment motion, the trial court must consider the *Burnet* factors on the record. On appeal, a ruling to exclude is reviewed for an abuse of discretion. Applying this standard, we conclude

---

[11]It also appears that the expert—an osteopath licensed in Arizona opining about the care owed by an obstetrician/gynecologist in Washington—may have been unqualified to testify about the applicable standard of care. *See Guile*, 70 Wn. App. at 21, 27 n.7

the trial court abused its discretion because it failed to consider the *Burnet* factors before striking the third affidavit.

We also conclude the Court of Appeals erred when it held the second affidavit lacked adequate factual support for the opinion that the Doctors' treatment fell below the standard of care. Because the testimony could sustain a verdict for the nonmoving party, it was sufficient. For this reason, we affirm the Court of Appeals' decision reversing the summary judgment order.

Madsen, C. J.

WE CONCUR:

Wiggins, J.

Owens, J.

Fairhurst, J.

Stephens, J.

No. 90357-3

GONZÁLEZ, J. (concurring)—I concur with the majority. I write separately, though, for several reasons. First, while I am sympathetic to the argument that a trial court should apply the *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997), analysis before striking an expert declaration submitted in relation to summary judgment motions as a discovery sanction, that does not appear to be what happened here. Instead, the plaintiff untimely submitted an expert declaration, the defendant moved to strike it on the grounds of untimeliness, and the trial court granted the motion. It is highly questionable whether that is in fact a discovery sanction.

Second, I write separately to stress that while it is an abuse of discretion for the trial court to impose harsh discovery sanctions without finding the three *Burnet* factors, it is not per se reversible error. *See Jones v. City of Seattle*, 179 Wn.2d 322, 338, 360, 314 P.3d 380 (2013) (holding *Burnet* error can be harmless); *see also Blair v. TA-Seattle E. No. 176*, 171 Wn.2d 342, 351, 254 P.3d 797 (2011) (declining to do the *Burnet* analysis on appeal for the first time). Reversal is strong medicine and will not be administered when it is plain from the record that the error was harmless. *See Jones*, 179 Wn.2d at 360 (citing *Holmes v. Raffo*, 60 Wn.2d 421, 424, 374 P.2d 536 (1962)). Given, of course, that there is an independent grounds to vacate the summary

judgment order in this case, such an analysis would be extraneous. It will not be in many cases.

I concur with the majority that trial court decisions to strike untimely declarations submitted in relation to summary judgment are properly reviewed for abuse of discretion. I recognize our case law is split on this, but I conclude that whether to accept an untimely filed affidavit is the sort of case management decision best left in the trial court's hands. *See Pitzer v. Union Bank of Cal.*, 141 Wn.2d 539, 556, 9 P.3d 805 (2000). I also agree that the second declaration was sufficient to defeat summary judgment. With these observations, I concur with the majority.

González, J.