IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| LISA BARTON, an individual, | No.  49516-3-II |
| Appellant, | |
| v. | |
| DR. STEVEN SANDIFER, D.C. and JANE DOE SANDIFER, individually and their marital community, and CHAMPION CHIROPRACTIC CENTER, INC., a Washington corporation, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, J.  —  Lisa Barton appeals the superior court's order granting summary judgment and dismissing her claims against Dr. Steven Sandifer and Champion Chiropractic Center, Inc., with prejudice.  On appeal, Barton argues that the superior court erred when it dismissed her medical malpractice claim and her lack of informed consent claim.  Because Barton failed to produce competent expert testimony to support essential elements of her claims, we affirm the superior court's summary judgment order.

FACTS

I. BACKGROUND

In July 2014, Barton met with Sandifer, a chiropractor, and complained of back and neck pain and headaches.[1] After Barton signed an informed consent form, Sandifer performed adjustments on two separate days. Two days after the second adjustment, Barton suffered strokes and went to the hospital. Barton claimed that in January 2015, Sandifer called her, apologized, and agreed that his treatment had caused her stroke.

In February 2016, Barton sued Sandifer and Champion (collectively, "Defendants") and claimed that the second, July 22, 2014, "manipulation was performed negligently and without [Barton's] informed consent," resulting in Barton's strokes. Clerk's Papers (CP) at 4. The superior court's case scheduling order set the deadline for disclosure of Barton's expert witnesses in February 2017 and required dispositive motions to be heard by June.

II. SUMMARY JUDGMENT

A. DEFENDANTS' SUMMARY JUDGMENT MOTION AND EVIDENCE

In August 2016, Defendants moved for summary judgment because Barton had failed to provide competent expert testimony that (1) Sandifer had breached the standard of care, (2) Sandifer had caused Barton's strokes, or (3) explained the nature and probability of the risk of stroke from chiropractic manipulation.

In support of their summary judgment motion, Defendants submitted records of Barton's visits to Champion, including the informed consent form signed by Barton on July 14, 2014. As

---

[1] Barton had been involved in a car accident in 1982 and a slip and fall accident in 2000.

relevant here, the informed consent form stated that Sandifer had been informed that chiropractic treatment posed risks, including "stroke," that were "extremely rare occurrences" and that Barton nevertheless agreed to undergo chiropractic care. CP at 32. By the form's terms, Barton agreed that she had "read[] or . . . [someone] had read to [her]" the informed consent form. CP at 32. According to Champion's records, on July 16 and 22, Barton underwent chiropractic treatment.

## B. BARTON'S RESPONSE AND EVIDENCE

In response to the summary judgment motion, Barton argued that Sandifer's January 2015 apology was an admission of causation and breach of the standard of care admissible as a party-opponent's statement under ER 801. Barton also argued that the consent form's statement that a stroke was an "extremely rare" potential complication of chiropractic manipulation was evidence of materiality. CP at 32.

Barton relied upon the evidence submitted in support of the summary judgment motion as well as her own declaration. In her declaration, Barton stated that she had signed the informed consent form but that she had "no memory of having signed the [form] and nobody went over its contents with me." CP at 76 (emphasis omitted). Had someone explained the risk of chiropractic treatment, Barton claimed that she would not have undergone treatment.

Barton further claimed that during both treatments, she had felt a "'pop' and immediate, severe pain" when Sandifer twisted her neck. CP at 76. Barton acknowledged that Sandifer had called her "[w]ithin days of [her] release from the hospital," and Barton claimed that they had spoken again in January 2015. CP at 76. During this January conversation, according to Barton, Sandifer "apologized profusely," said that he had "'not been able to sleep for a month' after my stroke because he was so upset at having caused it," and "agreed that his treatment had caused my

stroke." CP at 77 (emphasis omitted). Sandifer had stated that "'this exact situation' is why he carries insurance, and that he would contact his insurance company as soon as possible." CP at 77.

### C. SUMMARY JUDGMENT HEARING AND ORDER

At the summary judgment hearing, which was continued for one month on the parties' stipulation, Barton stated that she was "not asking for a continuance," although Barton claimed that the motion was "premature." Report of Proceedings (RP) at 10. The superior court granted Defendants' summary judgment motion. Barton appeals.

### ANALYSIS

### I. SUMMARY JUDGMENT STANDARD OF REVIEW

We review summary judgment orders de novo and consider the evidence in the light most favorable to the nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). "The 'purpose [of summary judgment] is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer on a trial[;] it is to carefully test this out, in advance of trial by inquiring and determining whether such evidence exists.'" *Keck*, 184 Wn.2d at 369 (alteration in original, emphasis omitted, internal quotation marks omitted) (quoting *Preston v. Duncan*, 55 Wn.2d 678, 683, 349 P.2d 605 (1960)).

Summary judgment is appropriate only when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." CR 56(c). A moving defendant may meet his burden to show no genuine issue of material fact by showing an absence of evidence to support the plaintiff's case. *Lee v. Metro Parks Tacoma*, 183 Wn. App. 961, 964, 335 P.3d 1014 (2014). "The burden then shifts to the plaintiff to come forward with sufficient

evidence to establish the existence of each essential element of the plaintiff's case." *Lee*, 183 Wn. App. at 964. "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Repin v. State*, 198 Wn. App. 243, 262, 392 P.3d 1174 (2017).

## II. MEDICAL MALPRACTICE CLAIM

### A. LEGAL PRINCIPLES

To establish medical malpractice, the plaintiff must prove two elements—failure to meet the standard of care and proximate cause:

> (1) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which [he] belongs, in the state of Washington, acting in the same or similar circumstances;
> (2) Such failure was a proximate cause of the injury complained of.

RCW 7.70.040; *see Keck*, 184 Wn.2d at 370. Generally, the plaintiff must prove both elements through medical expert testimony. *Keck*, 184 Wn.2d at 370.

### B. NO EVIDENCE OF BREACH

Barton argues that the superior court erred when it granted Defendants' summary judgment motion regarding Barton's medical malpractice claim because there are genuine issues of material fact related to negligence and causation. We disagree.

The standard of care is "that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which [he] belongs, in the state of Washington, acting in the same or similar circumstances." RCW 7.70.040(1). Failure to

meet the standard of care must generally[2] be established through expert testimony. *Keck*, 184 Wn.2d at 370. The plaintiff must have an expert testify regarding "what a reasonable doctor would or would not have done, that the [d]octor[] failed to act in that manner, and that this failure caused her injuries." *Keck*, 184 Wn.2d at 371.

Barton argues that Sandifer's January apology was sufficient to create a genuine issue of material fact that Sandifer had been negligent. Sandifer told Barton that "he had 'not been able to sleep for a month' after [Barton's] stroke because he was so upset at having caused it." CP at 77 (emphasis omitted). Sandifer also told Barton, "[N]othing like this had ever happened to him in his career," he "very specifically agreed that his treatment had caused [Barton's] stroke," and he said that "'this exact situation' is why he carries insurance, and that he would contact his insurance company as soon as possible." CP at 77 (emphasis omitted).

In considering Barton's argument, we treat the January apology as a party-opponent's admission.[3] And even if we assume, without deciding, that Barton's apology amounted to expert testimony, Sandifer's apology does not establish the standard of care or that Sandifer failed to meet that standard. *See Keck*, 184 Wn.2d at 371. Sandifer did not identify how he might have been negligent or what he did wrong. He did not state what a reasonable chiropractor would have done or how Sandifer failed to meet such a standard.

---

[2] The rare exception is where "medical facts are observable to," *Bauer v. White*, 95 Wn. App. 663, 667, 976 P.2d 664 (1999), and within "the expertise of a layperson." *Seybold v. Neu*, 105 Wn. App. 666, 676, 19 P.3d 1068 (2001). Barton does not argue that this rare exception applies.

[3] "[A statement is not hearsay if] [t]he statement is offered against a party and is . . . the party's own statement." ER 801(d)(2)(i).

Barton cites to *White v. Kent Medical Center, Inc.*, for the proposition that experts need not use specific "standard of care" terminology. 61 Wn. App. 163, 172, 810 P.2d 4 (1991). But our holding is consistent with the rule from *White*: here, Sandifer's apology is insufficient not because Sandifer failed to utter the phrase "standard of care" but because the *substance* of Sandifer's apology was deficient.

Viewing the evidence in the light most favorable to Barton and drawing all reasonable inferences therefrom, Barton produced no expert testimony that Sandifer breached the applicable standard of care. *See Keck*, 184 Wn.2d at 370. Barton's "complete failure of proof" concerning an essential element of her medical malpractice case "necessarily renders all other facts immaterial." *Repin*, 198 Wn. App. at 262. Accordingly, we hold that the superior court properly granted Defendants' summary judgment motion and dismissed Barton's medical malpractice claim.[4]

### III. LACK OF INFORMED CONSENT CLAIM

Barton argues that the superior court erred when it granted Sandifer's summary judgment motion regarding her lack of informed consent claim because there are genuine issues of material fact. Barton specifically argues that because the informed consent form listed "stroke" as an "extremely rare" risk of treatment, Barton has shown that stroke was a "material" risk of treatment

---

[4] Because Barton's evidence fails to establish breach of the standard of care, an essential element of her medical malpractice claim, her claim that the superior court wrongly granted summary judgment necessarily fails. *See Repin*, 198 Wn. App. at 262. Thus, we do not reach Barton's argument that a genuine issue of material fact exists related to whether Sandifer's alleged negligence proximately caused Barton's injury.

and that she can rebut the presumption of informed consent created by her signature on the informed consent form. Again, we disagree.

## A. LEGAL PRINCIPLES

Negligence and lack of informed consent are alternative methods of imposing liability; lack of informed consent, unlike negligence, allows recovery even where treatment was not negligent. *Backlund v. Univ. of Wash.*, 137 Wn.2d 651, 659, 975 P.2d 950 (1999). To make a prima facie case of lack of informed consent, the plaintiff must show

> (a) [t]hat the health care provider failed to inform the patient of a material fact or facts relating to the treatment;
> (b) That the patient consented to the treatment without being aware of or fully informed of such material fact or facts;
> (c) That a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts;
> (d) That the treatment in question proximately caused injury to the patient.

RCW 7.70.050(1); *Backlund*, 137 Wn.2d at 664. Washington takes an "objective approach" to lack of informed consent, so that the relevant inquiry is what a reasonably prudent patient under similar circumstances would have done. *Backlund*, 137 Wn.2d at 666 (citing RCW 7.70.050(1)(c)).

Materiality, referenced in RCW 7.70.050(1)(a) through (c), is defined by RCW 7.70.050(2): "a fact is . . . a material fact, if a reasonably prudent person in the position of the patient . . . would attach significance to it [in] deciding whether or not to submit to the proposed treatment." RCW 7.70.050(3) explains which material facts "must" be established by expert testimony:

> (a) The nature and character of the treatment proposed and administered;
> (b) The anticipated results of the treatment proposed and administered;
> (c) The recognized possible alternative forms of treatment; or

   (d) The recognized serious possible risks, complications, and anticipated benefits involved in the treatment administered and in the recognized possible alternative forms of treatment, including nontreatment.

To show materiality, the plaintiff must have expert testimony regarding "'the existence of a risk, its likelihood of occurrence, and the type of harm in question.'" *Seybold v. Neu*, 105 Wn. App. 666, 682, 19 P.3d 1068 (2001) (quoting *Smith v. Shannon*, 100 Wn.2d 26, 34, 666 P.2d 351 (1983)).

### B.  NO PRIMA FACIE CASE

The first three elements of a prima facie case of lack of informed consent require that Barton show that there was a "material fact"—here, the risk of stroke—of which she was not informed or otherwise aware.  RCW 7.70.050(1)(a)-(c).  Materiality, specifically the "'existence of a risk, its likelihood of occurrence, and the type of harm in question,'" *must* be established by expert testimony.  *Seybold*, 105 Wn. App. at 681-82 (emphasis added) (quoting *Smith*, 100 Wn.2d at 34).

Barton acknowledges that she must provide expert testimony, yet she relies solely upon the informed consent form's statement that there were risks to treatment including "stroke" and other complications and that the complications were "extremely rare."  CP at 32.  Barton's reliance on the informed consent form is misplaced:  the informed consent form is not the requisite expert testimony.  *See Seybold*, 105 Wn. App. at 682.  After Defendants moved for summary judgment, it was Barton's burden to come forward with or point to expert testimony.  *See Seybold*, 105 Wn. App. at 682; *Lee*, 183 Wn. App. at 964; CR 56(e).  Such expert testimony is required in order to show the existence of the risk of stroke, its likelihood of occurrence, and the type of harm in question.  *See Seybold*, 105 Wn. App. at 682.  But Barton failed to come forward with or point to

any expert testimony as required to show the first three elements of lack of informed consent, and accordingly her complete failure of proof concerning essential elements of her claim of lack of informed consent necessarily renders all other facts immaterial. *See Repin*, 198 Wn. App. at 262.

A second reason that Barton fails to show all the elements of a prima facie case is that the first element requires Barton to show "[t]hat the health care provider failed to inform the patient of a material fact . . . relating to the treatment." RCW 7.70.050(1)(a). Barton admits that she signed the informed consent form, which set forth the risk of "stroke." *See* CP at 76 ("I have now seen the 'informed consent' document[,] . . . which I signed that day."). Barton's sole argument related to this factor, which is her argument that she has shown that the risk of stroke was "material," does not create a factual dispute related to whether Barton was actually informed regarding the risk of stroke as a result of the treatment.

A plaintiff must establish all the elements of a prima facie case of lack of informed consent. *See* RCW 7.70.050(1). But when viewing the evidence in the light most favorable to Barton, she fails to produce any evidence to support the elements in subsections (a) through (c) of RCW 7.70.050(1). *See Repin*, 198 Wn. App. at 262. Accordingly, we hold that the superior court properly granted Defendants' summary judgment motion and dismissed Barton's lack of informed consent claim.[5]

---

[5] Because Barton fails to establish essential elements of her lack of informed consent prima facie case, her argument that the superior court wrongly granted Defendants' request for summary judgment of her lack of informed consent claim fails. *See Repin*, 198 Wn. App. at 262. Thus, we do not address Barton's argument that a genuine issue of material fact exists as to whether she could rebut the presumption of informed consent. We also reject Barton's claim underlying her appellate arguments that it was unfair for the superior court to grant the summary judgment motion on the basis of lack of expert testimony when the motion was brought well before the deadline to designate experts. This claim is not well-taken because Barton did not seek a continuance under CR 56(f) and in fact represented to the superior court that she did not want a continuance. Thus,

No. 49516-3-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040,

it is so ordered.

_____
JOHANSON, J.

We concur:

_____
MAXA, A.C.J.

_____
LEE, J.

---

Barton may not argue on appeal that summary judgment was wrongly granted because the matter
should have been continued.