IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| In the Matter of the Estate of | ) | |
| | ) | No. 34545-9-III |
| ANNE MARIE ROE, | ) | |
| | ) | |
| Deceased. | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

KORSMO, J. — The trial court granted summary judgment in favor of the estate of

Anne Marie Roe (Estate). Believing there are factual questions that preclude summary

judgment, we reverse. The competing requests for attorney fees on appeal are denied.

FACTS

This action pits siblings against one another. Father Theodore Roe passed away in

1997, while mother Anne Roe died in January 2014. Appellant Kathleen Roe Bennis was

the third of the four children born to the couple. The issues in this case arise from a loan

the parents made to Kathleen[1] in the sum of $14,809 in 1991. The loan was

memorialized in a writing by both parties that acknowledged Kathleen had repaid $2,800

of the figure. Clerk's Papers (CP) at 105.

---

[1] For convenience, we will occasionally refer to the family members by their first
names.

After Theodore passed away, Anne served as the personal representative of his estate. The loan to Kathleen was not recognized as an asset of his estate in the inventory Anne prepared. Anne disclaimed her half-interest in Theodore's estate, putting it into an irrevocable trust that she and Kathleen jointly served as trustees.[2] Subsequently, Anne wrote 41 checks to the youngest son, William, totaling $49,150. In 2008, she wrote two checks to Kathleen totaling $4,300. Each of the 43 checks bore a notation indicating that it was a "loan" to the child. No additional writing memorialized these loans. Anne prepared a new will in July, 2013, that bequeathed her house and certain bank accounts to her eldest son, Gerald Roe, and equally divided her residual estate among her four children.

After Anne passed away, Gerald became the personal representative of the Estate. The Estate prepared an inventory that proposed to use its right of retainer to offset the distribution shares going to William and Kathleen by the loans previously given them, including the balance of the 1991 loan to Kathleen. The younger siblings, represented by the same counsel, responded by filing this TEDRA[3] action in the Spokane County

---

[2] Theodore's will is not part of the record of this action and we are not aware of the final distribution scheme related to the trust.

[3] Trust and Estate Dispute Resolution Act, Chapter 11.96A RCW.

Superior Court.[4] They asked that the entire loan amounts be characterized as gifts. The

TEDRA and probate actions were consolidated.

The Estate eventually moved for summary judgment, and the two plaintiff siblings

did likewise. The parties agreed on a set of stipulated facts for purposes of the summary

judgment.[5] The competing motions ultimately were argued before the Honorable John

Cooney. Judge Cooney agreed that the checks written to William and the 2008 checks to

Kathleen were not sufficiently memorialized to qualify as loans. He granted them

summary judgment on that question. However, he ruled that the 1991 loan to Kathleen

was sufficiently recognized by the parties and did not constitute a gift. He then inquired

of further issues remaining for trial and directed that counsel attempt to work those

matters out.

---

[4] Unfortunately, there were plenty of additional actions involving the family and the two estates. In March 2013, the Estate's counsel alerted Kathleen's federal bankruptcy trustee in Illinois that she was likely to inherit $100,000; that notification lead to the dismissal of the bankruptcy and left Kathleen in difficult financial straits since there was no distribution of the inheritance. A lawsuit brought in Anne's name sought to remove Kathleen as co-trustee of Theodore's trust; that action was dismissed after Anne's death. Gerald and his other sister, Elizabeth, then sued Kathleen for an accounting of the trust. Another action filed in Spokane County Superior Court, but subsequently dismissed for want of prosecution, involved an effort to clarify some of the assets that might have been placed in trust.

[5] Some of the stipulated facts will be discussed in our analysis of the summary judgment ruling.

3

Kathleen, no longer represented by her original counsel,[6] sought reconsideration concerning the 1991 loan. She argued that it had been forgiven prior to Theodore's death. She included among her evidence an affidavit from her son Brian Bennis that attested that Anne and Theodore Roe had forgiven the loan in his presence. The trial court granted reconsideration and directed briefing on the issue of loan forgiveness, but declined to consider the additional evidence offered with the motion. After receiving briefing, the court eventually denied Kathleen's reconsideration by letter, ruling that there was insufficient evidence under the original stipulated facts to establish that the loan had been forgiven. CP at 258-259.

After the ruling was reduced to an order, Kathleen appealed to this court. A panel heard oral argument on the case.

## ANALYSIS

The primary issue presented is whether the trial court correctly rejected the loan forgiveness argument on reconsideration of the summary judgment. Although the judge explained why he found the original evidence of loan forgiveness insufficient, we conclude the court should have considered the additional evidence presented by the motion. With that evidence in hand, there was enough evidence to defeat summary judgment.

---

[6] The trial court ruling potentially created a conflict for the joint attorney because William would benefit if Kathleen's loan was repaid to the Estate or deducted from her share of the proceeds.

Several principles of law are at play in this appeal. This court reviews a summary judgment ruling de novo. *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). All facts and inferences are considered in a light most favorable to the nonmoving party. *Inniss v. Tandy Corp.*, 141 Wn.2d 517, 522, 7 P.3d 807 (2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998). This last consideration bears heavily on our decision.

The right of retention is an equitable doctrine by which an estate can withhold from a beneficiary's distribution a debt that the beneficiary owed the estate. *E.g., In re Jackson's Estate*, 200 Wash. 116, 118-119, 93 P.2d 349 (1939). The doctrine thus permits the estate to recover a debt that is otherwise uncollectable. *In re Smith's Estate*, 179 Wash. 417, 421-422, 38 P.2d 244 (1934).

The Deadman's statute, RCW 5.60.030, prohibits an interested party from testifying in her own behalf concerning a transaction with a deceased person.[7] The statute does not bar the testimony of a third party who witnessed a transaction that otherwise would fall within the scope of the statute. *Kilbourne v. Kilbourne*, 156 Wash.

---

[7] "A party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased, incompetent or disabled person." RCW 5.60.030.

5

439, 443-444, 287 P. 41 (1930) (couple's daughter could testify to the business dealings between the deceased husband and the mother).

The trial court retains discretion to consider additional evidence on reconsideration. As has been noted:

> The decision to consider new or additional evidence presented with a motion for reconsideration is squarely within the trial court's discretion. "'In the context of summary judgment, unlike in a trial, there is no prejudice if the court considers additional facts on reconsideration.'" Generally, nothing in CR 59 prohibits the submission of new or additional materials on reconsideration.

*Martini v. Post*, 178 Wn. App. 153, 162, 313 P.3d 473 (2013) (citations omitted).

While *Martini* recognizes the *discretionary* ability of the trial court to consider new or additional evidence on reconsideration, more recent authority suggests that it may be required to do so. *Keck v. Collins*, 184 Wn.2d 358, 357 P.3d 1080 (2015). There the court addressed an argument that the trial court had erred in striking some untimely expert affidavits when ruling on summary judgment. The majority concluded that untimely expert affidavits could only be stricken as a discovery sanction when the three factor[8] test of *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997), was

---

[8] The factors are: (1) whether a lesser sanction would suffice, (2) whether the violation was willful or deliberate, and (3) whether the opposing party was substantially prejudiced. *Burnett*, 131 Wn.2d at 497-498.

satisfied. 184 Wn.2d at 368-369. The *Keck* majority determined that the *Burnet* test was appropriate outside of the discovery violation context and should be applied to untimely affidavits submitted in response to a summary judgment motion. *Id.* at 369. The court reiterated:

> The "'purpose [of summary judgment] is not to cut litigants off from their right of trial by jury if *they really have evidence which they will offer on a trial*, it is to carefully test this out, in advance of trial *by inquiring and determining whether such evidence exists.*'"

*Id.* (citations omitted; alterations in original). The court then concluded that the trial court erred by striking the untimely affidavits without considering the *Burnet* factors. *Id.*

With these varying, and perhaps conflicting, principles in mind, we finally turn to the issue presented by this appeal. The trial court felt itself limited to the evidence contained in the stipulated facts submitted by the parties. It then determined that evidence (no activity on the loan for 24 years and failure to mention loan in Anne's recent will) was insufficient proof of loan forgiveness to defeat the Estate's motion for summary judgment. CP at 259. The court did not explain why it refused to consider the affidavit of Brian Bennis or the request that it take judicial notice of the fact that Theodore's estate did not include the loan to Kathleen among its assets in its inventory.

7

We believe it was error to disregard these items. It does not appear that Kathleen deliberately withheld the information.[9] More importantly, we do not believe the Estate was prejudiced by the late evidence and that a continuance to meet that evidence would have been an adequate remedy, if requested. It is in keeping with the purpose of summary judgment to consider all admissible evidence. Under *Kilbourne*, the testimony of Brian Bennis would establish that he observed his grandparents forgive the loan to his mother on her birthday in 1992. If believed by the trier of fact, that evidence would defeat the Estate's effort to retain the alleged debt.[10] Similarly, the fact that the loan was not considered an asset of Theodore's estate in 1997 is at least circumstantial evidence that the loan was no longer outstanding at that time and could be considered in conjunction with the other evidence in deciding whether the Estate genuinely had a right of retainer in the 1991 loan.

---

[9] It appears more in the nature of an overlooked issue, or perhaps one that was known but not provable until Brian provided information to his mother. The Estate mentioned the possibility of forgiveness in its motion boilerplate and argued that there was no evidence of forgiveness. CP at 60. In turn, Kathleen mentioned forgiveness or repayment in her motion and contended that the Estate would need to prove the continued existence of the debt by disproving those possibilities. CP at 76-77. She never asserted that the loan had been forgiven.

[10] Although not a part of our analysis, we do question the equity of allowing the Estate to claim a debt exists and then use the Deadman's statute to defeat an effort to contest that fact. It is one thing for the statute to be used as a shield against self-serving claims that can no longer be addressed due to death, but it is another thing altogether to use the statute as a sword to collect on a debt that might no longer exist. One typically must act equitably to gain the benefit of equity.

No. 34545-9-III
*In re Estate of Roe*

Accordingly, we reverse because there is an unresolved issue of material fact concerning whether the loan had been forgiven. We decline to award attorney fees or costs on appeal to either side. We appreciate that family dynamics or other factors frequently fuel litigation of this variety, but there is no significant financial benefit to the Estate or to Kathleen since the cost of this litigation likely exceeds the value of the recovery sought. Although Kathleen's position has been vindicated on appeal, timely assertion of her evidence and argument might have resulted in a different trial court ruling, obviating the need for this action.

Reversed and remanded for further proceedings.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Pennell, J.

9