IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| ERIC HOOD, | ) | |
| | ) | No. 39811-1-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEVENS COUNTY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

STAAB, A.C.J. — The trial court granted Stevens County's motion for summary judgment, finding that Eric Hood filed his complaint outside the one-year limitations period for violations of the Public Records Act (PRA), ch. 42.56 RCW. Specifically, the court found that an email sent to Hood by the County, reading "we believe this completes your request," triggered the commencement of the limitations period.

After the superior court dismissed Hood's complaint, and while his appeal was pending, our Supreme Court issued its opinion in *Cousins v. State*, 3 Wn.3d 19, 546 P.3d 415 (2024), setting forth a three-part test to determine whether a closing letter is a final, definitive response for the purpose of triggering the statute of limitations. Here, the email sent from the County only satisfied one of the three inquiries. As such, the email was not

a final definitive response that triggered the one-year statute of limitations and the court thus erred when it granted the County's motion for summary judgment.

BACKGROUND

On December 27, 2019, Eric Hood emailed a PRA request to Stevens County. Hood's request pertained to a recent audit:

> Please give me all the records related to the audit. That would include communications between the Stevens County prosecutor's office and the town, and any discussions among town officials and employees about the audit. Please send them to me electronically or let me know and I can share a dropbox with you.

Clerk's Papers (CP) at 4. The next day, Hood sent another email to the County stating: "[t]he time range for this request is from the date the Town of Springdale first contacted your office regarding the audit up to and including March 8, 2018." CP at 4. The County acknowledged receipt of this request two days later on December 30, 2019, with the following response:

> Attached please find records related to Stevens County Sheriff's Office incident report no. 1800114 in response to your December 30, 2019 public records request. Additional time will be needed to search our records for any email correspondence regarding this case. I anticipate that such records will be available within 2-3 weeks. Should the records be available sooner, I will let you know.

CP at 94.

On January 6, 2020, Hood received an email from Deputy Prosecuting Attorney, Christina Radzimska, which read:

2

> We conducted a search of our email database with the following search terms:
>
> 1. Town of Springdale
>
> 2. Springdale City Clerk/Treasurer
>
> 3. Lisa Sheppard
>
> 4. Springdale Audit
>
> This search resulted in no responsive emails.  We believe this completes your request.

CP at 170.  After sending this email, Radzimska closed the file.  Later that day, Hood responded to the email and asked if Radzimska could check for hardcopies or other locations.  After Hood did not hear back from her, he sent another email and asked whether the County received his prior email.

On March 10, 2020, Hood received an email from Sasha Blackman, Radzimska's paralegal, who informed Hood that Radzimska no longer worked in their office.  She asked Hood to clarify what his email was regarding.  Hood informed her that it was a records request and asked her to refer to the email chain.  On March 16, 2020, Hood received an email from Blackman containing three responsive records as attachments that stated: "Attached please find all the hard copies the Stevens County Prosecutor has regarding the Audit on the City of Springdale.  You can also Search more State Auditor's Office documents online."  CP at 85.

The following year, on March 10, 2021, Hood served his summons and complaint on the County. The County moved for summary judgment, alleging that Hood's complaint was filed more than one year after Radzimska's January 6, 2020 closing email. Hood responded, arguing that the email was not definitive and did not put him on notice that his PRA request was actually closed, and that the County released additional records on March 16, 2020, which was within one year of Hood commencing this case. The trial court agreed with the County and granted its motion for summary judgment.

Hood appeals.

## ANALYSIS

1. TRIGGERING EVENT FOR STATUTE OF LIMITATIONS

Hood contends the trial court erred by concluding that the County's email was a final, definitive response to Hood's request for public records that triggered the one-year statute of limitations outlined in RCW 42.56.550(6).

This court reviews orders on summary judgment de novo. *Anderson v. Grant County*, 28 Wn. App. 2d 796, 803, 539 P.3d 40 (2023); *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). In deciding a motion for summary judgment, the court "must consider the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Anderson*, 28 Wn. App. 2d at 803. Summary judgment is only appropriate if "there are no genuine issues of material fact and the

moving party is entitled to judgment as a matter of law." *Id*. This court "may affirm summary judgment on any basis supported by the record." *Id*.

Under the PRA, actions "must be filed within one year of the agency's claim of exemption or the last production of a record on a partial or installment basis." RCW 42.56.550(6). The Washington State Supreme Court recently interpreted this statute and, as a matter of first impression, determined whether "an agency's 'closing letter' may trigger the PRA's limitations period." *Cousins*, 3 Wn.3d at 36.

In *Cousins*, the court held that a sufficient closing letter "will generally trigger the PRA's statute of limitations" and that subsequently producing records may be relevant for the purpose of determining penalties or liability but "ordinarily will not restart the limitations period." *Id*. However, the "closing letter must be *sufficient*; an agency's use of the word 'closed,' without more, is not determinative." *Id*. The court reiterated that a closing letter must satisfy the "final, definitive response test" first discussed in *Belenski v. Jefferson County*, 186 Wn.2d 452, 378 P.3d 176 (2016), in accordance with the "attorney general's Advisory Model Rules [AMR] and the guidance provided in [the *Cousin*'s] opinion." *Cousins*, 3 Wn.3d at 36.

The court went on to explain what makes a closing letter sufficient. *Id*. In particular, the closing letter must provide the following information to the requestor:

> (1) how the PRA request was fulfilled and why the agency is now closing the request, (2) that the PRA's one-year statute of limitations to seek judicial review has started to run because the agency does not intend to

further address the request, and (3) that the requester may ask follow-up questions within a reasonable time frame, which may be specified by the agency.

*Id*. at 36-37. Additionally, the court explained that an agency is not required to search for additional records if the requestor asks a follow-up question, but if the agency does not intend to further address the request, "it must explicitly say so and reiterate that the statute of limitations has started to run." *Id*. at 37. This is because "[t]he final, definitive response test is an objective inquiry, so the agency's subjective intent . . . [is] not relevant." *Id*.

*Cousins* also provided a thorough overview of the one-year PRA statute of limitations precedent. *Id*. at 37-38. It explained that *Belenski* provides "the correct analytical framework for all PRA cases" and it also largely "affirm[ed] *Dotson*'s application of *Belenski* to the [specific] closing letter in that case." *Id*. at 38. However, the court declined to adopt or recognize "a bright-line rule that *Belenski* is necessarily satisfied by the word 'closed.'" *Id*. Instead, the closing letter will trigger the PRA's limitation period only if "the letter satisfies the final, definitive response test in accordance with the attorney general's [AMR] and the guidance provided in [this] opinion." *Id*. Importantly, *Cousins* noted that its opinion does not "claim to impose a retroactive standard of *strict* compliance." *Id*. at 52 (emphasis added).

6

As discussed in *Cousins*, the attorney general's AMR provides that a request "'can be closed' by an agency only when the request 'has been fulfilled.'" 3 Wn.3d at 47 (quoting WAC 44-14-04006(1)). Fulfillment can occur in several ways:

> [W]hen a requestor has inspected all the requested records, all copies have been provided, a web link has been provided (with assistance from the agency in finding it, if necessary), an entirely unclear request has not been clarified, a request or installment has not been claimed or reviewed, or the requestor cancels the request.

WAC 44-14-04006(1).

When a request has been fulfilled, the agency should provide the requestor with a "closing letter stating the scope of the request and memorializing the outcome," which should include an explanation on how the request was fulfilled. WAC 44-14-04006(1). Additionally, the closing letter "should also ask the requestor to promptly contact the agency if [they] believe[ ] additional responsive records have not been provided." WAC 44-14-04006(1). When the closing process has been completed, an agency no longer has an obligation to search for records. WAC 44-14-04007.

Having reviewed the principles established in *Cousins* and the AMR, we must now address whether the "closing letter" sent on January 6, 2020, was sufficient to trigger the PRA's one-year statute of limitations as the County contends.

First, although the email does indicate how the PRA request was fulfilled—because no responsive records were found—and why Hood's request was being closed—because the County believed this fulfilled his request—it fails the second and third

7

requirements outlined in *Cousins*. The letter did not indicate that the statute of limitations had begun to run or that the agency would not address the request any further and it failed to inform Hood that he may ask follow-up questions within a reasonable timeframe. Although *Cousins* clarifies that strict compliance is not required, two of the three requirements were not fulfilled and thus the email would not put a reasonable lay person on notice. *See Cousins*, 3 Wn.3d at 53 ("[T]he sufficiency of a closing letter must be considered objectively, applying the standard of a reasonable lay person.").

The County contends that because it did not respond to Hood's January 6 email asking if the County was sure there were no responsive records, that should have reinforced to Hood that the request was closed. This argument fails. As discussed, *Cousins* establishes that a requestor is allowed to ask follow-up questions, but if the agency does not intend to further address the request, "it must *explicitly say so* and reiterate that the statute of limitations has started to run." *Id*. at 37 (emphasis added). As such, failing to respond to Hood's question was not sufficient, the County needed to explicitly communicate to Hood that it did not intend to further address the request and that the statute of limitations started to run.

The County cites *Dotson v. Pierce County*, 13 Wn. App. 2d 455, 464 P.3d 563 (2020) to support the argument that the later production of records does not extend the date for calculating the statute of limitations. However, contrary to the case at hand, in *Dotson*, the first letter sent to the requestor was sufficient to constitute a final, definitive

8

response.  *Id*. at 471-72.  Despite the fact the County later reopened the request and produced more documents, because the first email satisfied the final, definitive response test, the statute of limitations was not tolled simply by reopening the claim and producing more documents.  *Id*. at 470.  *Dotson* is thus unhelpful for the County's argument because the initial email sent on January 6, 2020, did not satisfy the final, definitive response test.

The County argues that *Cousins* is intended to provide guidance for future PRA closing letters and warned against retroactive application.  The County misconstrues the language in *Cousins*.  "Washington has followed the general rule that a new decision of law applies retroactively unless expressly stated otherwise in the case announcing the new rule of law."  *Lunsford v. Saberhagen Holdings, Inc*. 166 Wn.2d 264, 271, 208 P.3d 1092 (2009).  *Cousins* stated that it did "not claim to impose a retroactive standard of strict compliance."  3 Wn.3d at 52.  However, nowhere in the opinion does the court claim that the test or guidance outlined in the opinion was not intended to apply retroactively to PRA cases.  As such, the County's argument fails.

While the trial court did not have the benefit of our Supreme Court's decision in *Cousins*, and we therefore do not fault it, we nonetheless hold that *Cousins* applies to this case and requires reversal of the order dismissing Hood's complaint on summary judgment.

2.   ATTORNEY FEES ON APPEAL

Hood requests attorney fees on appeal should he prevail, pursuant to RCW 42.56.550(4) and RAP 18.1(a).  The County contends that Hood would need to secure reversal from this court to receive attorney fees and that Hood should not be the prevailing party.  We conclude that Hood prevailed on appeal and is entitled to attorney fees.

The PRA provides that "[a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request" "shall be awarded all costs, including reasonable attorney fees."  RCW 42.56.550(4).  "This includes attorney fees incurred on appeal." *Dotson*, 13 Wn. App. 2d at 473.  Likewise, under RAP 18.1(a), we may award attorney fees to the prevailing party on appeal if applicable law grants a party the right to recover those fees and if the party requests them as prescribed by RAP 18.1.  *Wachovia SBA Lending, Inc. v. Kraft*, 165 Wn.2d 481, 493, 200 P.3d 683 (2009).  Here, Hood has prevailed against the County in a PRA action on appeal and has cited appropriate authority.  As such, we should award Hood his reasonable attorney fees on appeal as the prevailing party.

No. 39811-1-III
*Hood v. Stevens County*

Reversed and remanded for further proceedings.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, A.C.J.

WE CONCUR:

_____
Fearing, J.

_____
Murphy, J.