**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KISSAN BERRY FARM, a general partnership,<br><br>                    Appellant,<br><br>      v.<br><br>WHATCOM FARMERS COOP, a/k/a WFC, a/k/a Whatcom Farmers Co-op, a Washington corporation; CHS INC., a foreign corporation; and SYNGENTA CROP PROTECTION, LLC, a foreign limited partnership, a/k/a Syngenta US, a/k/a Syngenta,<br><br>                  Respondents. | No. 82774-0-I<br>(consolidated with No. 82775-8-I, No. 82776-6-I, No. 82777-4-I, and No. 82778-2-I)<br><br><br>DIVISION ONE<br><br><br><br>PUBLISHED OPINION |
| G&B FARM, a partnership, and G&B GROWERS, LLC, a limited liability company,<br><br>                  Appellants,<br><br>      v.<br><br>WHATCOM FARMERS COOP, a/k/a WFC, a/k/a Whatcom Farmers Co-op, a Washington corporation; CHS INC., a foreign corporation; and SYNGENTA CROP PROTECTION, LLC, a foreign limited partnership, a/k/a Syngenta US, a/k/a Syngenta,<br><br>                  Respondents. | |

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 82774-0-I/2

JS BERRY FARM, LLC, a limited
liability company,

Appellant,

v.

WHATCOM FARMERS COOP, a/k/a
WFC, a/k/a Whatcom Farmers Co-op, a
Washington corporation; CHS INC., a
foreign corporation; and SYNGENTA
CROP PROTECTION, LLC., a foreign
limited partnership, a/k/a Syngenta US,
a/k/a Syngenta,

Respondents.

KEN SIDHU FARMS, LLC, a limited
liability company

Appellant,

v.

WHATCOM FARMERS COOP, a/k/a
WFC, a/k/a Whatcom Farmers Co-op, a
Washington corporation; CHS INC., a
foreign corporation; and SYNGENTA
CROP PROTECTION, LLC, a foreign
limited partnership, a/k/a Syngenta US,
a/k/a Syngenta,

Respondents.

MALUKA FARM, a general partnership,

Appellant,

v.

WHATCOM FARMERS COOP, a/k/a
WFC, a/k/a Whatcom Farmers Co-op, a
Washington corporation; CHS INC., a

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

foreign corporation; and SYNGENTA
CROP PROTECTION, LLC, a foreign
limited partnership, a/k/a Syngenta US,
a/k/a Syngenta,

Respondents

SMITH, A.C.J. — Five farms sued Syngenta Crop Protection LLC,

manufacturer of the herbicide Callisto, and Whatcom Farmers Coop and its

successor entity, CHS Inc., Callisto's distributors, for damages allegedly caused

to their raspberry crops. The trial court dismissed, finding the Federal

Insecticide, Fungicide and Rodenticide Act preempted the farms' two express

warranty claims. The farms appeal that dismissal and associated denials of their

motions to amend their complaints, supplement briefing, and several related

motions to reconsider those rulings.

Because Bates v. Dow Agrosciences LLC, 544 U.S. 431, 125 S. Ct. 1788,

161 L. Ed. 2d 687 (2005) superseded Washington precedent holding Federal

Insecticide, Fungicide and Rodenticide Act  preempts express warranty claims,

we reverse.

## FACTS

### Events Leading to Litigation

In 2012, five raspberry farms in Whatcom County—Kissan Berry Farm,

Ken Sidhu Farms LLC, JS Berry Farm LLC, G&B Farm & G&B Growers LLC, and

Maluka Farm—purchased the herbicide Callisto on the basis of representations

made by Aaron Bagwell, a representative of Whatcom Farmers Coop (WFC). As

WFC's "field man," Bagwell was known and trusted by the farms, was familiar

with their crops and equipment, and frequently made suggestions about best

3

No. 82774-0-I/4

practices.  Though the exact nature of Bagwell's statements is in dispute,[1] their general character is not: Bagwell recommended Callisto's use for weed control in their raspberry fields and represented that it was "safe" to use on red raspberry.

Callisto is an herbicide manufactured by Syngenta.  Its EPA[2]-approved labeling—which fills a 31-page booklet—includes a number of disclaimers and warranties and provides detailed descriptions of the product's uses and dangers.

Its general disclaimer is located close to the front of the booklet and begins by stating that "[t]he Directions for Use of this product must be followed carefully.  It is impossible to eliminate all risks inherently associated with the use of this product."  It then specifies particular risks:

> Crop injury, ineffectiveness or other unintended consequences may result because of such factors as manner of use or application, weather or crop conditions, presence of other materials or other influencing factors, in the use of the product, which are beyond the control of SYNGENTA CROP PROTECTION LLC or Seller.

It specifies that, to the extent permissible under relevant law, "Buyer and User agree to hold SYNGENTA and Seller harmless for any claims relating to such factors."

The booklet continues directly into Syngenta's warranty, which incorporates by reference some of the language of the disclaimer:

> SYNGENTA warrants that this product conforms to the chemical description on the label and is reasonably fit for the purposes stated in the Directions for Use, subject to the inherent risks referred to above, when used in accordance with directions under normal use conditions.

---

[1] Because of the posture of this case, which is appealed from a grant of summary judgment, all facts are viewed in the light most favorable to the farms. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

[2] U.S. Environmental Protection Agency.

Similar in structure to the disclaimer, the warranty—"[t]o the extent permitted by applicable law"—disavows any liability for use contrary to the labeling instructions or under conditions not reasonably foreseeable. It ends by denying availability of "incidental, consequential, or special damages," limiting remedy to the purchase price of the product.

The booklet's "Directions for Use"—incorporated in both the disclaimer and warranty language quoted above—include directions specific to red raspberries. They state: "Callisto may be applied as a pre-bloom post-directed spray in . . . red raspberry." They prescribe an application rate of no more than two fluid ounces per acre per year in "bush or caneberries," and direct that if two applications are made they should be separated by at least two weeks.

Bagwell recommended an application of two fluid ounces per acre. The farms purchased the herbicide from Bagwell and applied it at two fluid ounces per acre. Syngenta admits that this application is "consistent" with the product guide's instructions.

About two weeks after application, raspberry plants at each of the farms began to exhibit signs of damage and then die. Bagwell, asked by some of the farms to assess the harm and its cause, indicated that he suspected Callisto. Representatives from Syngenta subsequently visited the farms, and the farms report that they confirmed Callisto was the likely cause. The farms' owners replanted their fields to different degrees, accruing a range of costs. They allege that Callisto's lingering effects on their land affected not only their 2012 crop yield

but also demonstrably reduced their production capacity for several years thereafter.

<u>History of Litigation</u>

In 2016, each farm separately sued[3] Syngenta, WFC, and CHS Inc., which had merged with WFC in 2015.  The complaints were structured similarly, alleging against WFC/CHS and Syngenta a series of breaches of express warranty arising both from Bagwell's comments to the farms and from Callisto's labeling.  The first claim, against WFC, identified Bagwell's oral representations as giving rise to an express warranty upon which the plaintiffs relied.  The second claim incorporated the oral express warranty claim against CHS in its capacity as WFC's corporate successor, having inherited WFC's assets and liabilities post-merger.  The third claim asserted that WFC was acting as Syngenta's agent when selling Callisto, and that Syngenta, through that agency relationship and Bagwell's oral representations, shared liability under the oral express warranty theory.

The fourth and final claim concerned an express warranty theory not premised on Bagwell's representations.  Instead, this claim—brought against Syngenta in its capacity as the booklet's author—relied on the express warranty language of the Callisto product guide.  The claim's language, which the litigation process would eventually subject to considerable scrutiny, included several portions of particular note.  It contended that "[a]lthough the booklet . . .

---

[3] The five lawsuits were eventually consolidated for purposes of discovery and dispositive motions.

contained some safety warnings about the handling and application of Callisto, it contained *no warnings of any kind* that if Callisto were applied to control weeds in areas where raspberry plants were being grown that there was a risk that it could cause harm to the plants."  (Emphasis added.)  The same paragraph of the complaints quoted the express warranty language of the product guide, and the following paragraph quoted the guide's statement that Callisto could be applied "as a pre-bloom post-directed spray in . . . red raspberry."  The complaints concluded that "[t]he printed representations set forth in paragraphs 37[, the express warranty language,] and 38, [on application to raspberries,] when considered in combination, constitute an express warranty by Syngenta that, as long as the application directions were properly followed, Callisto would not cause harm to raspberry plants."

Though the lawsuits were initiated in March 2016, the Syngenta summary judgment motion that serves as the main vehicle for this appeal was not brought until December 2020.  The motion framed only one issue: "[w]hether Plaintiffs' express warranty claims against Syngenta and CHS are preempted by [the Federal Insecticide, Fungicide and Rodenticide Act[4] (FIFRA)] because to prevail, the Court would have to impose requirements in addition to or different from the requirements imposed by FIFRA and approved by the EPA."  However, the motion also briefly contended that the farms had not produced any evidence of an agency agreement between Syngenta and WFC and that their "agency allegation" should therefore be dismissed.

_____

[4] 7 U.S.C. §§ 136-136y.

WFC and CHS perfunctorily joined Syngenta's motion for summary judgment, adding no argument but asserting that "[b]ased on the same law, argument, and evidence . . . [WFC] and CHS Inc[.] are also entitled to summary judgment." The farms' response did not address Syngenta's agency argument, instead focusing on "the single issue before the court": preemption.

Syngenta and WFC/CHS both filed substantive replies, the latter making new arguments. Syngenta's reply addressed the supposed inadmissibility of declaration evidence submitted by the farms in support of their response. It also repeated its preemption arguments and reasserted that the famers failed to provide evidence supporting the existence of an agency relationship. WFC/CHS contended in their reply that they could not be held liable for "claims relating to a product's labeling when said claims could not be maintained against the actual manufacturer." WFC/CHS also asserted, for the first time, that Bagwell's oral representations were merely affirmations of the value of Callisto, and therefore insufficient to create an express warranty independent from that included in Callisto's label.[5]

After submission of all the summary judgment briefing, but before the motion's noted date of argument, the farms sought permission to submit supplemental briefing to buttress their preemption argument. The farms' attorney stated that his "intention was not to submit additional argument, certainly not

---

[5] We note that arguments raised for the first time in a reply brief are not properly before the court because they do not permit the nonmoving party the opportunity to respond. White v. Kent Med. Ctr., Inc., 61 Wn. App. 163, 168, 810 P.2d 4 (1991).

additional facts," but instead "basically some case law" regarding the federal preemption issue. The court reserved ruling but permitted the parties to submit copies of the federal cases they had already cited, to which it did not have access. Then, still before the court heard the summary judgment motion, the farms moved for leave to file a second amended complaint.

The court heard argument on the summary judgment and amendment motions together. The court, based on its reading of the Callisto label, raised two new issues sua sponte. It pointed to the warranty's broad language that "there is no guarantee. There can always be some harm to crops." And the court also pointed to the warranty provision limiting compensation for any harm to the cost of the product refunded.

At the conclusion of the hearing, the court reserved ruling and later entered written orders denying the motion to amend the complaint and granting Syngenta's motion for summary judgment, dismissing all claims with prejudice. The farms moved for the court to reconsider its rulings on the two motions. They contended among other things that neither of the first two causes of action pleaded—concerning oral express warranty claims against WFC and CHS—was subject to preemption or agency arguments. The court denied the reconsideration motions.

The farms appeal.

ANALYSIS

Supplemental Briefing

We first conclude that the court acted within its discretion when it denied the farms' motion to submit supplemental briefing at summary judgment.

CR 56(c) requires a party responding to a motion for summary judgment to file responsive documents no later than 11 calendar days before the noted hearing date. CR 6(b) permits the trial court to, at its discretion and where cause is shown, extend this time.

Here, the farms filed a response to Syngenta's motion for summary judgment before requesting that they be able to supplement their argument, functionally asking for permission to extend their time to submit responsive briefing. Their motion asserted that their original response had been rushed because it was prepared around the holidays, and consequently had insufficiently addressed Syngenta's arguments.

The court did not abuse its discretion by requiring the farms' adherence to the usual rules of motion practice.

Motion for Summary Judgment

The parties' arguments, both in the trial court and on appeal, center on whether FIFRA preempts state express warranty claims. We hold that it does not, and that Washington case law to the contrary has been superseded by a subsequent decision of the United States Supreme Court: Bates, 544 U.S. 431.

We review summary judgment de novo, considering the evidence and reasonable inferences drawn from it in the light most favorable to the nonmoving

10

party. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate only when no genuine issue exists as to a material fact and the moving party is entitled to summary judgment as a matter of law. Keck, 184 Wn.2d at 370. "A material fact is one that affects the outcome of the litigation." Owen v. Burlington N. Santa Fe R.R., 153 Wash.2d 780, 789, 108 P.3d 1220 (2005).

### 1. Preemption Generally

The Supremacy Clause of the United States Constitution dictates that "the laws of the United States . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding." U.S. CONST., art. VI, cl. 2. State law that conflicts with federal law is accordingly "without effect." Maryland v. Louisiana, 451 U.S. 725, 746, 101 S. Ct. 2114, 68 L. Ed. 2d 576 (1981). Preemption analysis " 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.' " Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992) (alterations in original) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S. Ct. 1146, 91 L. Ed. 1447 (1947)).

Preemption may occur expressly or implicitly. Express preemption involves explicit preemptive language in a statute. Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 604-05, 111 S. Ct. 2476, 115 L. Ed. 2d 532 (1991). Analyzing courts " 'focus on the plain wording of the [preemption] clause' " to

11

determine its scope. Puerto Rico v. Franklin California Tax-Free Tr., 579 U.S. 115, 125, 136 S. Ct. 1938, 195 L. Ed. 2d 298 (2016) (quoting Chamber of Com. of U.S. of Am. v. Whiting, 563 U.S. 582, 594, 131 S. Ct. 1968, 179 L. Ed. 2d 1031 (2011). "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." Cipollone, 505 U.S. at 517.

In the absence of express preemptive language, Congress's intent that a statute supersede state law may be implicit. Rice, 331 U.S. at 230. This occurs, for instance, where a statute "regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." English v. Gen. Elec. Co., 496 U.S. 72, 79, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990). It may also occur where there is an actual conflict between state and federal law such that "it is impossible for a private party to comply with both state and federal requirements." English, 496 U.S. at 79. This latter sort of implied preemption is sometimes called "impossibility pre-emption." Wyeth v. Levine, 555 U.S. 555, 573, 129 S.Ct. 1187, 173 L. Ed. 2d 51 (2009).

Because of the inferences necessarily involved in determining Congress's implicit intent, there is a " 'strong presumption against finding preemption in an ambiguous case.' " Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wn.2d 243, 265, 884 P.2d 592 (1994) (quoting Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 326, 858 P.2d 1054 (1993). This presumption is stronger still " 'with state regulation regarding matters of health and safety,' in which states have traditionally exercised their sovereignty." Hue v.

12

Farmboy Spray Co., Inc., 127 Wn.2d 67, 78-79, 896 P.2d 682 (1995) (quoting

Fisons Corp., 122 Wn.2d at 327.  Our state Supreme Court "adhere[s] to a

rigorous analysis of the preemption issue because of [its] continuing desire to

uphold state sovereignty to the maximum extent, tempered only by the mandate

of the Supremacy Clause of the United States Constitution."  Hue, 127 Wn.2d

at 77.

    2.  FIFRA

Respondents to this appeal contend that FIFRA both expressly and

impliedly, by way of impossibility, preempts Washington State express warranty

causes of action.  FIFRA is a federal statute that regulates "the use, as well as

the sale and labeling, of pesticides[6]; regulate[s] pesticides produced and sold in

both intrastate and interstate commerce; provide[s] for review, cancellation, and

suspension of registration and g[ives] EPA" considerable enforcement authority.

Ruckelshaus v. Monsanto Co., 467 U.S. 986, 991, 104 S. Ct. 2862, 81 L. Ed. 2d

815 (1984).

Any manufacturer "seeking to register a pesticide must submit a proposed

label to EPA as well as certain supporting data."  Bates, 544 U.S. at 438;

7 U.S.C. §§ 136a(c)(1)(C), (F).  On the basis of that submission, the EPA will

consider whether the pesticide meets the claims made about its use, 7 U.S.C.

---

[6] Callisto, though referred to as an herbicide, is classified as a pesticide under FIFRA.  See 7 U.S.C. §§ 136(t), (u) (defining pesticides as substances intended for preventing, destroying, repelling, or mitigating any pest, including fungi and weeds, or, "intended for use as a plant regulator, defoliant, or desiccant").  It has received EPA approval and is therefore subject to FIFRA's labeling requirements.

13

No. 82774-0-I/14

§ 136a(c)(5)(A), or will cause unreasonably adverse effects the environment, including economic, social, or dietary harms, 7 U.S.C. §§ 136a(c)(5)(C), (D), 136(bb).  The EPA also considers whether the pesticide's proposed label meets various statutory and regulatory requirements.  7 U.S.C. § 136a(c)(5)(B); 40 CFR § 152.112(f) (2004).  A pesticide is "misbranded" if its label is out of compliance with any of a number of statutory directives, such as making any "false or misleading" statement or omitting directions for use or necessary warnings. 7 U.S.C. §§ 136(q)(1)(a), (F), (G).  The EPA will not approve registration under FIFRA if it determines the product is misbranded.  40 CFR § 152.112(f).  And no pesticide may enter the market without first being approved for registration by the EPA.  7 U.S.C. § 136a(a).  Once a product has been approved, change in labeling that concerns information about the product's efficacy is subject to re-approval.  7 U.S.C. §§ 136a(c)(9)(C)(iii), (f)(1); 40 C.F.R. §§ 152.44, 152.46.

FIFRA contains provisions directly addressing the role of the states in its regulatory scheme, including an express preemption clause:

> (a) In general
>
> A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.
>
> (b) Uniformity
>
> Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v.

14

No. 82774-0-I/15

Both our Supreme Court and our court of appeals have addressed subsection (b), the express preemption clause. In three cases decided together in 1995, our Supreme Court determined that the "requirements" it references include both statutory mandates and certain duties arising under state common law. Hue, 127 Wn.2d at 85-86 (preempting inadequate warnings and instructions claims, products liability claims based on the label, and failure to warn claims); Goodwin v. Bacon, 127 Wn.2d 50, 51, 896 P.2d 673 (1995); All-Pure Chem. Co. v. White, 127 Wn.2d 1, 3, 12, 896 P.2d 697 (1995). The Court did not directly address FIFRA preemption of express warranty claims, though Hue did note that precedent upon which it heavily relied held "the duty underlying a breach of express warranty claim was . . . voluntarily assumed, not 'imposed under state law.'" 127 Wn.2d at 81 (quoting Cipollone, 505 U.S. at 526. But two years later this court, relying on a body of federal case law, extended Hue, Goodwin, and All-Pure by finding that FIFRA preempts express and implied warranty, consumer protection, and certain negligence claims. Didier v. Drexel Chem. Co., 86 Wn. App. 795, 799-806, 938 P.2d 364 (1997). Washington courts have not addressed FIFRA preemption since 2002, in Eriksen v. Mobay Corp., 110 Wn. App. 332, 41 P.3d 488 (2002) (applying existing case law).

In the meantime, however, the United States Supreme Court has directly addressed FIFRA's express preemption in Bates. 544 U.S. at 439. The Court concluded that "[r]ules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express

15

warranties or other contractual commitments plainly do not qualify as

requirements for 'labeling or packaging.' " Id. at 444 (quoting 7 U.S.C.

§ 136v(b)).  It held that FIFRA's express preemption clause did not preempt the

farmers' defective design, defective manufacture, negligent testing, and breach

of express warranty claims against an herbicide manufacturer.  Id. at 444.

> Specifically addressing express warranty claims, Bates said:
>
> > To be sure, Dow's express warranty was located on
> > Strongarm's label.  But a cause of action on an express warranty
> > asks only that a manufacturer make good on the contractual
> > commitment that it voluntarily undertook by placing that warranty on
> > its product. . . .  [T]his common-law rule does not require the
> > manufacturer to make an express warranty."

Id. at 444-45.  It rejected an argument that a finding of liability would "induce" the

defendant manufacturer to alter its label because "an event, such as a jury

verdict, that merely motivates an optional decision is not a requirement."  Id.

at 445.

### 3.  Application in this Case

Because Bates has superseded Hue, Goodwin, All-Pure, and Didier, we

conclude that FIFRA does not preempt the farms' express warranty claims either

expressly or impliedly.  This conclusion conforms not only with Bates but also

with Washington's reluctance to limit its own power through an overly broad

application of the Supremacy Clause, especially in the context of the state's

traditional authority to regulate matters of health and safety.

We reject the argument made by Syngenta and WFC/CHS that the United

States Supreme Court's 2013 decision in Mutual Pharmaceutical Company, Inc.

v. Bartlett requires a different holding. 570 U.S. 472, 133 S. Ct. 2466, 186 L. Ed. 2d 607 (2013). In Bartlett, the court held that the Federal Food, Drug, and Cosmetic Act (FDCA) preempts state law design defect claims against manufacturers premised on the labeling of generic drugs. 570 U.S. at 490. It did not rely on any express preemption clause in so doing—the FDCA's treatment of generic drugs does not have one. Bartlett, 570 U.S. at 493. Instead, it found implied impossibility preemption because "state-law design-defect claims . . . that place a duty on manufacturers to render a drug safer by either altering its composition or altering its labeling are in conflict with federal laws that prohibit manufacturers from unilaterally altering drug composition or labeling." Bartlett, 570 U.S. at 490. The Court was addressing the prohibition against generic drugs using labels that deviate substantively from the already approved brand name drug's labeling. Bartlett, 570 U.S. at 477; 21 C.F.R. § 314.94(a)(8)(iii).

Bartlett is inapposite. Bates is directly on point, interpreting FIFRA rather than a different statutory scheme. Bates only explicitly addressed express preemption. 544 U.S. at 442-54. But its reasoning that common law does not require manufacturers to offer express warranties applies with similar force to establish that there is no conflict between FIFRA and the common law that makes following both impossible. Bates, 544 U.S. at 444-45, 49 ("If Congress had intended to deprive injured parties of a long available form of compensation, it surely would have expressed that intent more clearly."). The impossibility found in Bartlett, in contrast, centered on the lockstep labeling requirements to which the FDCA holds generic drugs; no such restriction exists here. Indeed,

17

FIFRA permits relabeling.  7 U.S.C. § 136a(f)(1); 40 C.F.R. §§ 152.44, 152.46.

Finally, FIFRA contains an express preemption clause.  Congress, by directly

addressing the matter and speaking on the bounds of preemption, created a

presumption against a finding of implied preemption.  Cipollone, 505 U.S. at 517.

Distinguishing Bartlett is consistent with similar treatment from a number

of other courts.  See Hassett v. Dafoe, 74 A.3d 202 (Pa. Super. Ct. 2013) (FIFRA

did not preempt failure to warn claim); Ansagay v. Dow Agrosciences LLC, 153

F. Supp. 3d 1270 (D. Haw. 2015) (FIFRA did not preempt products liability

claims); Bourbia v. S.C. Johnson & Son, Inc., 375 F. Supp. 3d 454, 464

(S.D.N.Y. 2019) (FIFRA did not preempt express warranty claim); Crespo v. S.C.

Johnson & Son, Inc., 394 F. Supp. 3d 260, 277 (E.D.N.Y. 2019) (FIFRA did not

preempt express warranty claim); Carson v. Monsanto Co., 508 F. Supp. 3d

1369, 1377 (S.D. Ga. 2020) (FIFRA did not preempt express warranty and

products liability claims).

We therefore conclude that FIFRA does not preempt the farms' express

warranty claims.

4. Interpretation of Express Warranty

Respondents argue in the alternative that, regardless of this court's

decision as to preemption, the express warranty's limiting language provides a

separate ground for dismissal.[7]  Because determination of that limiting

---

[7] This issue was not raised in the summary judgment briefing below.  It was first raised sua sponte by the trial court during the summary judgment hearing.  We address it here because we can affirm on any basis supported by the record and because the matter has been briefed by the parties on appeal.

18

language's applicability would involve us making factual findings, it does not provide an independent basis on which to affirm the trial court's dismissal at summary judgment.

The Uniform Commercial Code, Title 62A RCW, allows for the creation and limitation of express warranties. Express warranties are created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." RCW 62A.2-313. Language limiting the express warranty "shall be construed wherever reasonable as consistent" with the language of the warranty itself. RCW 62A.2-316(1). But "negation or limitation [of the warranty by a disclaimer] is inoperative to the extent that such construction is unreasonable." RCW 62A.2-316(1). Thus, where the strict language of a disclaimer would function to negate an express warranty in its entirety, rather than limit it to certain circumstances, that negation is unreasonable and inoperative.

Here, there is arguably some ambiguity in Callisto's language limiting its express warranty. The disclaimer reads:

> It is impossible to eliminate all risks inherently associated with the use of this product. Crop injury, ineffectiveness or other unintended consequences may result because of such factors as manner of use or application, weather or crop conditions, presence of other materials or other influencing factors in the use of the product, which are beyond the control of SYNGENTA CROP PROTECTION LLC or Seller. . . . Buyer and User agree to hold SYNGENTA and Seller harmless for any claims relating to such factors.

---

Davidson Serles & Assocs. v. City of Kirkland, 159 Wn. App. 616, 624, 246 P.3d 822 (2011).

19

To the extent that the disclaimer's first sentence may be read to negate the effect of the express warranty,[8] it is inoperative. Reasonable construction of the disclaimer's language so that it remains consistent with the express warranty is, however, possible if it is read to limit the application of the express warranty to instances where influencing factors beyond the control of Syngenta are not present.

We conclude that the disclaimer language in Callisto's packaging does not negate the existence of the express warranty. Because the question of whether any relevant influencing factor is present is not properly before us and would involve this court in fact finding, we do not reach it.

Motions to Amend Complaints and Motions for Reconsideration

The farms contend that the court abused its discretion by denying their motion to amend their complaints. They also challenge the trial court's denial of their motions for reconsideration regarding its rulings on summary judgment and on their motions to amend. Because we have concluded that the farms' express warranty claims are not preempted, and because the purpose of the motions to

---

[8] The express warranty applies where the Directions for Use have been followed, subject to the "inherent risks" referred to in the disclaimer. Because the parties do not contest whether the farmers abided by the directions—they did—we are concerned only with the effect of the disclaimer language.

20

No. 82774-0-I/21

amend was to circumvent the impact of a finding of preemption,[9] we do not reach

these issues.[10]

We reverse and remand.

*Smith, A.C.J.*

WE CONCUR:

---

[9] The farms admit that reversal of the summary judgment order renders "moot" the issue of whether the motion to amend was properly decided.

[10] We do not address respondents' argument that appellants' claims are, despite presentation as express warranty claims in the complaint, in fact disguised failure to warn claims. A case's theories of recovery are defined by its complaint. CR 8(a). The action's success is determined by the plaintiff's ability to prove facts supporting those theories. Cedar River Water & Sewer Dist. v. King County, 178 Wn.2d 763, 779, 315 P.3d 1065 (2013). Here, the farms' theory of recovery is not the defendants' to choose.

We also do not address respondents' contention that Bagwell's statements were insufficient to give rise to an express warranty. Where, as here, it appears that there are disputed issues of fact regarding the content of statements allegedly giving rise to an express warranty, we cannot rule on the warranty's existence as a matter of law. Fed. Signal Corp. v. Safety Factors, Inc., 125 Wn.2d 413, 423-24, 886 P.2d 172 (1994). We are doubly reluctant to address this matter because it was not raised adequately in front of the trial court. See supra note 5.

Other issues, such as the limitation of damages or whether WFC acted as Syngenta's agent, were raised or addressed only in passing in the parties' briefing or were not properly preserved for appeal. "Passing treatment of an issue . . . is insufficient to merit judicial consideration." Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996). We therefore do not address these issues.

21